WASHINGTON SUBURBAN SANITARY COMMISSION
v. ARTHUR C. ELGIN et al.

[No. 528, September Term, 1982.]

*Decided January 7, 1983.*

The cause was argued before GILBERT, C. J., and LOWE and WEANT, JJ.

*Roger C. Duncan* for appellant.

*Arthur C. Elgin, Jr.,* for appellees.

LOWE, J., delivered the opinion of the Court.

"I have more than once had occasion to say," repeated Lord Halsbury in *Hilder v. Dexter* 1902 A.C. 474, 477, "that in construing a statute I believe the worst person to construe it is the person who is responsible for its drafting. He is very much disposed to confuse what he intended to do with the effect of the language which in fact has been employed."

In this appeal from the Circuit Court for Montgomery County, the Washington Suburban Sanitary Commission (WSSC or Commission) would have us substitute by judicial interpretation what it presumably intended to effect by a 1982 amendment to the Washington Suburban Sanitary District (WSSD) Code. It would have us apply the wag's canon of statutory construction referred to by Justice Frankfurter in *Greenwood v. United States,* 350 U.S. 366, 374 (1956), that only when the legislative history is doubtful should we look to the language of the statute. Our reply, however, is that we do not inquire what the Legislature or its draftsmen meant, we ask only what the statute means.[1]

Appellant Commission, however, would have us descend into a legislative labyrinth so artfully contrived that we cannot find our way in or out unassisted. Unless one has the heart of Theseus and the clue of thread given him by Ariadne, one should hesitate before probing the plethora of obscure sources wherein often archaic laws repose hidden in hoary tomes waiting like the Minotaur to devour the innocent and unexperienced.

Most Maryland laws which are enacted by the General Assembly, ultimately appear in the Annotated Code of Maryland which is legitimated by legislative acts declaring it evidence of the law. But local laws, applying to unchartered or non-code counties, were to be found in the recent past in the Code of Public Local Laws of 1930, a separate article of which was assigned to each county. After 1930 local legislation applying to such counties appeared

---

1. Oliver Wendell Holmes: *Theory of Legal Interpretation,* 12 Harv.L.Rev. 417, 419 (1899).

only in the Session Laws for the year in which it was enacted and was not codified elsewhere. Anyone interested in a county law first sought it in the appropriate Article of the Code of Public Local Laws (1930), then sought possible additions, amendments or repeals by perusing the session laws.[2] Subsequently, some of the counties (especially the chartered counties) had their local laws codified in county codes which were legislatively legitimated as evidence of that law therein contained.

The Washington Suburban Sanitary District Law was first enacted in 1918 and was itself a hybrid "conceived as a result of a ménage á trois and derived primarily from the legislative loins of Montgomery and Prince George's Counties." *Wash. Sub. San. Comm'n v. Pride Homes*, 47 Md. App. 390, 392 (1980). In 1930 it appeared in "Flack's Code" (*i.e.*, the Code of Public Local Laws of Maryland, 1930) in the Montgomery County Code Article (16) as § 989, *et seq.* and in the Prince George's Code Article (17) as § 1013, *et seq.* Just as local legislation is left to the gentle graces of local county delegations under an unwritten local courtesy option, so too is the WSSD legislation referred to a Bi-County Committee in each House consisting of the legislative delegates of these two counties. Perhaps, because of the impact of the Commission beyond those two county lines (including condemnation power throughout the State), the laws relating thereto were not left exclusively to be sought in the two county codes (where it appeared after those two counties adopted charter government), but were ultimately published in a WSSD Code. It too was given the imprimatur of sovereign legitimacy in 1971, when the Legislature made that code evidence of the laws therein contained. See *Pride Homes, supra.*

Increasing internecine controversy within the Bi-County

---

**2.** Since 1971 the Legislature has met annually for all purposes. Prior thereto it met biannually in general session and in the off years a short "budgeting" session during which local laws could be enacted only if declared to be emergency measures. The same was true during "special" sessions. The difficulty, of course, is that there is no way of determining whether a special session or a pre-1970 30-day session enacted any "emergency" local laws without going through the records for each of these years as well.

Legislative Committee demanded more and more General Assembly time and attention, notwithstanding that the "local courtesy" usually extended local delegations helped expedite their local laws through their six requisite readings in the General Assembly. Growing concern statewide, along with some lack of uniformity in what appeared as evidence of the law in the three sources (Montgomery County Code, Prince George's County Code and the WSSD Code), brought about a move to have the WSSD law incorporated in a single source. In 1981, it became Art. 67 of the Annotated Code of Maryland.

The 1981 Act is primarily that with which we are here concerned and, as will be seen, purported to make no substantive changes but did make sporadic "clarification" of the occasionally ambiguous language. A further house-cleaning was prepared for the 1982 session and ultimately adopted, but that affects the case before us only by what language was *not* changed, that might have been, rather than what changes were made. An interesting procedural phenomenon is that the voluminous sanitary district boundary descriptions which were first placed in the Maryland Code in 1981, were removed from Art. 67 of the Annotated Code of Maryland in 1982, and relegated back to the session laws from whence they came. Only the substantive law remains in the State Code. The district lines are again to be found only in the acts of the General Assembly of 1982, § 19-101, and presumably in the acts of successive years as amendments are made to the boundaries from time to time, unless the future provides them another place of repose.

— this case —

The Washington Suburban Sanitary Commission sought to condemn a right of way over lands owned by appellees in Poolesville, Maryland. Its authority to do so arguably emanated from Md. Ann. Code, Art. 67, § 1-3 (1981 Supp.), which states in pertinent part that the Commission (WSSC) could purchase or condemn property or rights "within or

without the sanitary district" to carry out the purposes of the Article which were generally to coordinate and carry out the sanitary disposal of surface waters within the district.

The sanitary district "within or without" which the statute granted WSSC such extraordinary powers, was as noted, created along with the Commission in 1918 by Ch. 122, Acts of the General Assembly. The sanitary district was originally defined in what is now Art. 67, § 19-101 (1982 Supp.) and changed approximately 20 times over the years by amendment. All of the changes necessarily amended the 1918 Act, *i.e.,* by reference to "the Washington Suburban Sanitary District created by chapter 122 of the Acts of the General Assembly of 1918."

This was necessitated by the unique nature of the district transcending county lines and the equally unique powers of the Commission, the authority of which — according to the Attorney General — was not restricted even to the district confines.[3] The condemnation portion of that authority as it extends "without" the district is at issue here, because in 1970 the Legislature enacted Ch. 513 as an addition to that oft-amended Act. It reads as follows:

"1A. TOWN OF POOLESVILLE. (A) *Further excluded from the provisions of this Act is that portion of the area within the corporate boundaries of the Town of Poolesville, Montgomery County, said excepted area being described in Section 58-2 of Montgomery County Code of 1965, as amended by Ordinance No. 4,* 11A, 19, 20 *of the Commissioners of Poolesville,* dated November 23, 1964; OR IN EFFECT ON MARCH 31, 1970.

(B) THE WASHINGTON SUBURBAN SANITARY COMMISSION RETAINS ALL ITS POWERS AND RESPONSIBILITY BY STATUTE FOR APPROVAL OF ANY WATER OR SEWER SYSTEM IN ANY AREA OUTSIDE OF THE

---

3. 61 Op.Atty.Gen. 424 (1976), holding that the right to condemn within or without the district, in the exercise of good faith, was a constitutional delegation of legislative authority to the WSSC.

WASHINGTON SUBURBAN SANITARY DISTRICT; EXCEPT SUCH COMMISSION MAY NOT CHARGE A FEE TO THE TOWN OF POOLESVILLE FOR THE COMMISSION'S APPROVAL OF PLANS FOR THE INSTALLATION, ALTERATION, OR EXTENSION OF THE TOWN OF POOLESVILLE'S SEWER SYSTEM.

(C) ALL ACTS OR PARTS OF ACTS INCONSISTENT WITH THE PROVISIONS OF THIS SECTION ARE HEREBY REPEALED TO THE EXTENT OF SUCH INCONSISTENCY, EXCEPTING, HOWEVER, THOSE RELATING TO THE AUTHORITY OF THE STATE BOARD OF HEALTH AND SPECIFICALLY SET FORTH IN ARTICLE 43 OF THE ANNOTATED CODE OF MARYLAND, 1957 EDITION."

The problem is in determining what was meant by "this Act" so that we can understand from what Poolesville was intended to have been excluded. According to appellant, by reference to the Title and enacting clause [4] of the House Bill 1275 (which became upon enactment in 1970 Ch. 513), the "Act" from which Poolesville was to be excluded was Ch. 122

---

4. "AN ACT to add a new Section 1A to Chapter 122 of the Acts of 1918, as added to and amended by Chapter 812 of the Acts of the General Assembly of Maryland of 1963 and Chapter 311 of the Acts of the General Assembly of Maryland of 1965, providing for the exclusion of the Town of Poolesville from the Washington Suburban Sanitary District as such area is described by Section 2 of Chapter 58 of the Montgomery County Code of 1965 as amended by the Commissioners of Poolesville. in their Ordinance No. 4 AS OF MARCH 31, 1970; AND TO PROVIDE THAT THE WASHINGTON SUBURBAN SANITARY COMMISSION SHALL NOT CHARGE A FEE TO THE TOWN OF POOLESVILLE FOR APPROVAL OF PLANS IN ACCORDANCE WITH OTHER SECTION OF THE WASHINGTON SUBURBAN SANITARY STATUTES.

SECTION 1. *Be it enacted by the General Assembly of Maryland.* That new Section 1A be and it is hereby added to Section 1 of Chapter 122 of the Acts of 1918, as added to and amended by Chapter 812 of the Acts of the General Assembly of Maryland of 1963 and Chapter 311 of the Acts of the General Assembly of Maryland of 1965, to follow immediately after Section 1 thereof; and . . . ."

of the Acts of 1918 as amended in 1963 and 1965, which amendments had resulted in the inclusion of Poolesville within the sanitary district. Thus, still according to appellant's interpretation, by looking at the substance of the law enacted and emphasizing its amended application, Poolesville was to be excluded from the *sanitary district;* but because of the authority of the Commission to condemn "within *or without* the sanitary district", Poolesville property would still have been subject to condemnation.

The following year, 1971 (1971 Md. Laws, Ch. 115), the "Washington Suburban Sanitary District Code", was legalized as evidence of that law. According to appellant, when what became § 19-49.1 by the 1981 Act first appeared in the new WSSC Code the publisher "gratuitously" added an explanation after the words "this Act" from which Poolesville had been excluded the previous year. Enclosed within brackets and underlined appear the words [this Code] presumably to explain that the exclusion of Poolesville from "the Act" as expressed (which would have taken the Town out of the sanitary district) was really meant to exclude it from all of the provisions of the WSSD Code. If that were true, the WSSD law as interpreted by the Attorney General, would permit the Commission to exercise its authority anywhere in Maryland "within or without the sanitary district" — *except in Poolesville.* But, of course, the publisher's opinion [5] is of no legal effect.

It was, however, apparently persuasive upon those who recodified the WSSD Code ten years later. In 1981 (the 1981 Md. Laws, Ch. 805), the Legislature chose to transfer the laws relating to the Washington Suburban Sanitary District from the separate Code as we mentioned above, to the Annotated Code of Maryland.[6] In so doing, it repealed its prior legalization of the WSSD Code and reenacted — "with amendments" — the contents of that Code as Article 67 of the Annotated Code of Maryland. The "amendments",

---

5. The publisher, according to Chapter 115 of the Acts of 1971 was Michie City Publications Company, Incorporated.

6. Which is also published by Michie.

according to the title, were described only as "clarifying language" and a perusal of Chapter 805 of Laws of Maryland, 1981 supports that description. The numbered cross references from the old WSSD Code were made to correspond with the new numbers; the term "said" which was in the old Code used as an adjective, was frequently replaced with the article "the"; references made to "subheadings" in the old Code, were in some instances replaced by the term "subtitle"; and, where "subtitle" previously appeared, it was replaced by the word "Article," as was the term "Code" in at least one instance. But significantly for our purposes here, the word "Act" was repealed from § 19-49.1 (a) and replaced by the term "Article" so that the controversial section read:

> "Further excluded from the provisions of this [Act] ARTICLE is that portion of the area within the corporate boundaries of the Town of Poolesville, Montgomery County, [said] THE excepted area being described in § 58-2 of 4, 11A, 19 AND 20 of the Commissioners of Poolesville; or in effect on March 31, 1970."

By so doing the Legislature appears to have adopted the interpretation of the publisher and arguably, at least, "clarified" its original intent.

Because appellant believes its interpretation of the words "this Act," after tracing the Poolesville exclusion to its source, referred to the "Act" of 1963 and 1965 which enlarged the district geographically to include Poolesville, it now would have us substitute the words "sanitary district" for the newly inserted word "Article" in Article 67, § 19-49.1. The means it would have us use apparently are to declare

> "Section 19-49.1 of Article 67, Annotated Code of Maryland void for not having been adequately described in the title of the act transferring the laws relating to the Washington Suburban Sanitary District to the Annotated Code of Maryland . . ."

or, as an alternative, to declare it

"so ambiguous that it is in need of construction."

Obviously we can do neither. Although the subsections (b) and (c) following § 19-49.1 (a) are not immediately clear to us, as pointed out by appellant, we are not aware that their lack of clarity emanates from the challenged word in subsection (a). Nor do we follow the reasoning that because (b) and (c) may be ambiguous we should so construe the offending term in (a). To the extent that the original term "this Act" had ambiguity — which fact is attested by Michie's "gratuitous" definition inserted in the WSSD Code — the Legislature expressly, overtly and intentionally "clarified" it. We are at a loss how appellant would have us declare unconstitutional an Act, the title of which advises will contain clarifications, then clarifies, on the ground that the Act made a substantive change. In order to declare as substantive that which the Legislature said clarifies, we would have to substitute appellant's interpretation for that which the Legislature clearly appears to have adopted.

We agree with appellant, citing *Barrett v. Clark,* 189 Md. 116, 127 (1947), that:

"A statute can be given no more extended operation than that explained in the title."

We add to that the principle that we must confine ourselves to ordinary meanings and not strain to find some subtle or forced interpretation of the law. *State v. Berry,* 287 Md. 491, 495 (1980). The title explains that in clarified language, and we are bound by that explanation. We are also grateful to appellant for guidance extracted from *Board v. Stephans,* 286 Md. 384, 396-397 (1979), quoting from *Bureau of Mines v. George's Creek,* 272 Md. 143, 155 (1974):

"[I]t is well settled that because 'the principal function of a Code is to reorganize the statutes and state them in simpler form, changes are presumed to be for the purpose of clarity rather than for a change in meaning.' *Welsh v. Kuntz,* 196 Md. 86, 97, 75 A.2d 343 (1950). Even a change in the

phraseology of a statute in a codification will not as a general rule modify the law, unless the change is so radical or material that the intention of the Legislature to modify the law appears unmistakably from the language of the Code."

The *Stephans* Court concluded with the truism that:

"It certainly can be no less true that an enactment of the General Assembly specifying in its title that it is intended to make only stylistic changes is not intended to make a change of substance." *Id.* at 397.

We agree with the trial judge who granted the appellees' Motion Raising Preliminary Objection on the ground that the court lacked subject matter jurisdiction; we hold that whatever authority the WSSC is granted by Article 67 and wherever that authority is applicable, it is not applicable in Poolesville except as provided for in the limited context of § 19-49.1 (b). We hasten to add that we are not explicitly or implicitly holding that WSSC is authorized to exercise its powers "without" the sanitary district as advised by the Attorney General. That issue is simply not before us and may, if applicable at all, be determined only within the factual context upon which it is sought to be exercised.

In conclusion we note that appellant's counsel apprised the Court upon inquiry at argument that WSSC had recommended to the Bi-County Legislative Committee an amendment to the 1982 recodification substituting "Sanitary District" for the word "Article" in the section under scrutiny. That this was not done, assuming such recommendation, simply supports our statutory reading and conclusion that if the Legislature had not meant what it said, it would not have said it.

> *Judgment affirmed.*
> *Costs to be paid by appellant.*