632 A.2d 509

**TIDEWATER/HAVRE DE GRACE, INC. et al.**

v.

**The MAYOR AND CITY COUNCIL OF HAVRE DE GRACE.**

**No. 461, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Nov. 4, 1993.

Certiorari Granted Jan. 28, 1994.

**220**

Robert J. Carson (Ronald G. Dawson and Smith, Somerville & Case, on the brief), Baltimore, for appellants.

Frederick J. Hatem, Jr. (Dewey Brian Stanley and Reed, Feinberg & Hatem, on the brief), Bel Air, for appellee.

Argued before GARRITY, ALPERT and DAVIS, JJ.

ALPERT, Judge.

Marinas,[1] as plaintiffs, challenged the validity of a local Havre de Grace tax ordinance. The Circuit Court for Harford County (William O. Carr, J.) upheld the ordinance, and now two of the marinas appeal, asking us to address the following two questions:

I.    Whether Ordinance 765 is invalid since it exceeds the City's authority to impose boat slip user fees granted to it by the General Assembly?

II.    Whether Ordinance 765 is void for vagueness?

In addition, the Mayor and City Council of Havre de Grace, defendants below and appellees and cross-appellants herein,[2] raise a third question:

III.    Whether the lower court interpreted [paragraph 6B of Ordinance 765] so as to defeat the intent and purpose of Ordinance No. 765 by allowing a lessee to refuse to pay the user tax?

We answer the first two questions in the negative, and therefore, as to those issues only, we affirm. We answer the third question with a qualified affirmative, and therefore, as to that issue only, we shall modify the trial court's judgment.

## I.   BACKGROUND

Pursuant to Chapter 261, Laws of 1992 (now codified as

---

1.   The plaintiffs/marinas were as follows: (1) Tidewater/Havre de Grace, Inc., t/a Tidewater Marina, (2) Arvid, Inc., t/a Havre de Grace Marina, and (3) Penn's Beach Marina, Inc., t/a Penn's Beach. The current appellants include all but Arvid.

2.   The appellees ignored several Md. Rules in its brief: 8–503(b), particularly that portion that requires references to the record extract to be indicated as (E. ......); 8–504(a)(1), particularly that portion that states that "[w]hen a reported Maryland case is cited, the citation shall include a reference to the official Report" (almost all of appellee's pinpoint cites were to the *unofficial* report); and 8–504(a)(7), particularly that portion that states that the appellee's brief shall contain "*only* those [constitutional or statutory provisions] not included in the appellant's brief." (Emphasis added.)

Md.Ann.Code art. 24, § 9–605 (Supp.1992)) [3] (hereinafter, "Chapter 261"), the General Assembly of Maryland enacted legislation that permitted municipal corporations to assess user fees not to "exceed 5% of the rental charges for the *docking and storage* of boats." §§ 9–605(b), (c) (further specifying that the maximum annual user fee shall also not exceed $100 per boat) (emphasis added). This legislation took effect on October 1, 1992.

On October 5, 1992, the Mayor and City Council of Havre de Grace ("the City") enacted local Ordinance No. 765 ("Ordinance 765" or "the Ordinance"). The Ordinance imposed "[a]n annual fee of 5%, not to exceed One Hundred Dollars ($100), of all rental charges for the *docking, slip rental and storage, dry or wet,* of boats[.]" (Emphasis added.) Ordinance 765 also contained several other provisions that are relevant to the instant appeal: (1) the user fees are to be remitted to the City on a semi-annual basis; (2) the City may, at its option, audit the financial records of any business [4] that is required to charge and collect the fees; and, (3) civil penalties were prescribed for any business that fails to comply.

On October 26, 1992, the plaintiffs filed in the Circuit Court for Harford County a Complaint for Declaratory Judgment and Injunctive Relief, in which the plaintiffs sought to have that court (1) declare that the City was without authority to enact Ordinance 765, and (2) enjoin the City from enforcing the Ordinance.

The City answered the Complaint, and eventually both sides filed motions for summary judgment. Following a hearing on these motions, the circuit court, in its 23–page written opinion, found, *inter alia,* as follows:

---

3. Unless otherwise indicated, all citations to Chapter 261, Laws of 1992, shall be to Md.Ann.Code art. 24.

4. We note that, inasmuch as the only "businesses" at issue in this case are marinas, we shall use the two terms (business, and marina) interchangeably.

1.  that, with respect to Chapter 261, the $100 cap applied to "boat slips in the water[,] and manifested an intent not to place the cap on dry storage or moorings";

2.  that the City had sufficient authority to pass Ordinance 765;

3.  that the Ordinance is not void for vagueness inasmuch as it is clear that, under the Ordinance,

    (a) the lessee is required to pay the fee, and "the marinas are merely charged with the duty of collecting the fee,"

    (b) the $100 limit per boat applies to "*all* types of docking and storage, [in contrast to Chapter 261, where the $100 limit] merely [applies to] docking in the water," and

    (c) "the [rental] fees [are due to] be paid and collected [only] when the rental charges are paid and collected," and not when the fees are merely earned but not paid; and

4.  that the issue as to the City's authority to promulgate any guidelines or regulations pursuant to Ordinance 765 is not yet ripe for a judicial decision, since the City has not yet promulgated either any such guidelines or regulations.

From this judgment, both sides then filed their respective, timely appeals.

## II.  *ANALYSIS*

The marinas raise two issues as to the propriety of the trial court's decision.  The first involves the authority of the City to pass Ordinance 765 in light of the authorizing language of Chapter 261.  To resolve this issue we must examine that authorizing language to determine the General Assembly's intent, and therefore we must invoke the rules of statutory construction.

The second of the marinas' issues involves whether Ordinance 765 is void for vagueness.  To resolve this issue we determine whether the terms of Ordinance 765 are so vague

that persons of ordinary intelligence must guess at their meaning.

We discuss these two issues below, respectively.

### A. AUTHORITY

■ It is axiomatic that Article XI–E, § 5, of the Maryland Constitution prohibits a municipality from levying "any type of tax, license fee, franchise tax or fee" unless the imposition of such a charge is expressly authorized by the Maryland General Assembly. The marinas' first contention is simply that Chapter 261 authorized a municipality to impose user fees on "boat slips" (so-called "wet storage") only; therefore Ordinance 765 exceeded the City's authority under Chapter 261 by imposing user fees on "dry storage" (*i.e.*, the on-land storage of boats) as well.

The marinas support this contention by positing that:

(1) Chapter 261 does not contain the word "dry" or the phrase "dry storage" anywhere within its text; "[i]nstead, Chapter 261 alternatively uses the specific phrase 'boat slip' and the general phrase 'the docking and storage of boats' when referring to a user fee";

(2) the title of Chapter 261 is "Municipal Corporations— *Boat Slip* User Fee," thereby indicating that the Act applied to wet storage fees only (emphasis added). *See also Smelser v. Criterion Insurance Co.*, 293 Md. 384, 390, 444 A.2d 1024 (1982) (the title of an act is relevant in ascertaining the legislative intent and purpose);

(3) Under Maryland common law, where the meaning of a tax statute appears unclear, the statute is to be construed most strongly against the government and in favor of the citizens (*citing Comptroller of the Treasury v. John C. Louis Co.*, 285 Md. 527, 539, 404 A.2d 1045 (1979));

(4) Also under Maryland common law, it is a well-settled principle of statutory interpretation that specific terms [such as "boat slips"] in a statute prevail over general language that might otherwise prove controlling [such as "docking and storage"]. *Id.* (*citing Perryman v. Subur-*

*ban Development Corp.,* 33 Md.App. 589, 598, 365 A.2d 570 (1976), *rev'd on other grounds,* 281 Md. 168, 377 A.2d 1164 (1977));

(5) The legislative history of Chapter 261 indicates that the fees were to apply to wet storage only.  Specifically, the Budget and Taxation Committee of the General Assembly apparently recommended (and the General Assembly subsequently adopted) the inclusion of the "$100 per *boat slip*" (emphasis added) limit to the bill as then-existed; this implicitly demonstrates (according to appellants) the General Assembly's concern with wet storage only; and, finally,

(6) When the General Assembly had previously wanted to impose a user tax on every form of boat storage, it had used the allegedly broader phrase "space rentals" to do so, and not the more narrow phrase "boat slip" (*citing* § 9–602 (Anne Arundel County tax); *Reinhardt v. Anne Arundel County,* 31 Md.App. 355, 356 A.2d 917, *cert. denied,* 278 Md. 731 (1976)).

▮ The trial court, of course, must construe a statute so as to ascertain and give effect to the intention of the legislature. *See, e.g., Washington Suburban Sanitary Commission v. Elgin,* 53 Md.App. 452, 460, 454 A.2d 408 (1983).  This "cardinal rule" is the "polestar of statutory interpretation." *Smelser,* 293 Md. at 389, 444 A.2d 1024 (*quoting Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 311, 407 A.2d 738 (1979)).  As the Court of Appeals has noted, in determining the intent of the legislature

the [trial] Court considers the language of an enactment in its natural and ordinary signification.  A corollary to this rule is that if no ambiguity or obscurity appears in the language of the statute, there is usually no need to look elsewhere to ascertain the General Assembly's intent.

*Id.  See also Washington Suburban,* 53 Md.App. at 460, 454 A.2d 408 (the court must confine itself to ordinary meanings and not strain to find some subtle or forced interpretation of the law).  The phrase "look[ing] elsewhere" (as used in *Smel-*

*ser,* 293 Md. at 389, 444 A.2d 1024) refers to the employment of the rules of statutory construction, which rules are never to be used to create an ambiguity, only to remove one. *See Murphy v. Stuart M. Smith, Inc.,* 53 Md.App. 640, 644, 455 A.2d 69 (1983) (*citing John McShain, Inc. v. State,* 287 Md. 297, 301, 411 A.2d 1048 (1980)).

Finally, we note that

[a]bsent a clear indication to the contrary and if reasonably possible, a statute is to be read so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory.

*Smelser,* 293 Md. at 389, 444 A.2d 1024 (citations omitted).

As did the trial court before us, we examine the statutory language *sub judice* in light of these principles.

Chapter 261 provides in relevant part:

### Municipal Corporations—Boat Slip User Fee

FOR the purpose of authorizing a municipal corporation to impose a user fee on charges for the docking and storage of boats; limiting the total user fees collected per year to a certain amount; limiting the rate of the user fee to a certain percentage; ... and generally relating to authorization for a municipal corporation to impose a boat slip user fee.

\*    \*    \*    \*    \*    \*

(a) *Imposition.*—A municipal corporation may impose by ordinance a user fee on charges for the docking and storage of boats.

(b) *Rate.*—(1) Subject to the limitation in paragraph (2) of this subsection, a municipal corporation shall set the rate of the user fee.

(2) The rate of the user fee may not exceed 5% of the rental charges for the docking and storage of boats.

(c) *Maximum amount.*—The total amount of user fees charged per boat slip may not exceed $100 annually.

■    Under the circumstances presented in this case, we believe the language of the statute speaks for itself. First,

pursuant to Chapter 261, a "municipal corporation may impose by ordinance a user fee on charges for the *docking and storage* of boats," and the "rate of the user fee may not exceed 5% of the rental charges for the *docking and storage* of boats." (Emphasis added.) As the trial court implicitly found, the ordinary meaning of "docking and storage" (as used in the above-two sections) is not limited to wet storage only, but rather includes *both* dry and wet storage of boats. *See Washington Suburban, supra,* 53 Md.App. at 460, 454 A.2d 408. We therefore hold that, pursuant to the clear language of these portions of Chapter 261, the City had sufficient authority to pass an Ordinance that levied fees on both the wet and dry storage of boats.

█ Second, pursuant to Chapter 261, the "total amount of user fees charged per *boat slip* may not exceed $100 annually." (Emphasis added.) As the trial court correctly found (and as the marinas themselves concede in their brief), the ordinary meaning of "boat slip" refers exclusively to the wet storage of a boat adjacent to a wharf or a pier. We therefore hold that, pursuant to the clear language of this portion of Chapter 261, the $100 maximum user fee applies to wet storage only. The City therefore clearly acted within its authority by applying this maximum fee more narrowly (*i.e.,* applying it to *both* wet and dry storage) than would be permissible under Chapter 261.

All of the marinas' arguments—whether those arguments are predicated on (1) the absence of the phrase "*dry* storage" from the statute, (2) an interpretation of the title or preamble to Chapter 261, (3) the general rules for interpreting a tax statute, (4) the rule that specific language controls over general language, (5) the effect of legislative history, or (6) the interpreting of Chapter 261 in conjunction with other statutes—are only valid where there is a sufficient ambiguity in the language of the statute itself. *See,* in addition to cases cited above, *Dillon v. State,* 277 Md. 571, 583, 357 A.2d 360 (1976) (language of preamble "may be resorted to as an aid in construction of [an ambiguous] statute"); *Comptroller v.*

*Louis, supra,* 285 Md. at 539, 404 A.2d 1045 (tax statutes are construed against the government only in "cases of doubt"). Where there is no sufficient ambiguity, however, as here, the language of the statute will be given its clear meaning.

We do not, of course, now hold that, simply because the language of a certain statute *appears* clear, a court seeking to interpret that statute is necessarily and absolutely precluded from examining the circumstances surrounding the particular enactment. Indeed, as the Court of Appeals has noted previously, the plain-meaning rule is "rather an axiom of experience than a rule of law, and does not preclude consideration of *persuasive* evidence if it exists."[5] *Kaczorowski v. Baltimore,* 309 Md. 505, 514, 525 A.2d 628 (1987) (*quoting Watt v. Alaska,* 451 U.S. 259, 265–66, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80 (1981)) (emphasis added). Rather, we simply hold that, in the case at bar, the language in question is so clearly consistent with the apparent purpose (here, to generate revenue for local governments) that further research is unnecessary. *See id.* 309 Md. at 515, 525 A.2d 628. That is, the marinas have failed to provide sufficiently persuasive evidence to overcome the plain meaning of the statutory language.

## B. *VAGUENESS*

■ It is well-settled that "[a] statute which prohibits the doing of an act [framed] in terms so vague that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application violates the constitutional guaranty of due process of law." *Blum v. Engelman,* 190 Md.

---

**5.** The 1992 Session "floor report" of the Senate Budget and Taxation Committee stated, in pertinent part, with regard to the purpose of the bill:

This bill as written allows municipalities to tax the *dockage and storage* of boats at a rate of up to 10%. Under the original bill, commercial boats are exempted from the tax. The bill also provides for the proceeds of the tax to be used by the municipalities for governmental services related to boating.
(Emphasis added).

109, 113, 57 A.2d 421 (1948).[6]   The marinas' second contention on appeal is, quite simply, that "Ordinance 765 is so riddled with uncertainties that it fails to satisfy this fundamental requirement of due process."

In support of this assertion, the marinas argue that the following are fatal ambiguities of Ordinance 765:

1.  "[W]hile it is clear that the Ordinance attempts to impose some sort of user fee, it is not at all clear on whom the fee is imposed [, either the lessee (*i.e.*, the "user") or the lessor (*e.g.*, the marina) ]."

2.  "If it is assumed, arguendo, that the Ordinance validly applies to all forms of boat storage and is to be paid by the lessees, another point of confusion in the Ordinance concerns how the $100 limit on the annual fee imposed by Paragraph 1 [of the Ordinance] is intended to be applied." That is, as the marinas argued below, "Does this mean that a boat owner who keeps his boat in dry storage for part of the year and in a boat slip during the balance of the year is subject to two $100 annual limits?   The Ordinance simply fails to address such situations[.]"

3.  The marinas argue that the Ordinance merely speaks of two semi-annual periods when the fees are to be paid;  it does not, however, address whether such fees are to be paid when they are earned, or when they are received[.]

4.  The marinas contend that the City has tacitly conceded that the Ordinance is flawed, since it has admitted the necessity of devising rules and promulgating regulations in order to implement the Ordinance.   Moreover, the Ordinance (they contend) contains no specific delegation of authority to anyone.

As to the first of these contentions (on whom is the fee imposed), the trial court found that the statute was sufficiently clear.   The court found that the lessees are charged with the

---

6.  Both the 14th Amendment to the Constitution, and Article 24 of the Maryland Declaration of Rights, protect citizens against vague statutes. *See Eanes v. State,* 318 Md. 436, 459, 569 A.2d 604, *cert. den.,* 496 U.S. 938, 110 S.Ct. 3218, 110 L.Ed.2d 665 (1990) (tests for vagueness based on fourteenth amendment due process or fairness concerns).

duty of paying the fee and the marinas "are merely charged with the duty of collecting [it]." We agree.

In *Eanes,* the Court of Appeals held that

[a] statute is not vague when the meaning of the words in controversy can be fairly ascertained by reference of judicial determinations, the common law, dictionaries, treatises or even the words themselves, if they possess a common and generally accepted meaning.

318 Md. at 460, 569 A.2d 604. In Ordinance 765, "the words themselves" clearly specify that the fee is to be *"collected* by all businesses" and that "[a] business . . . is required to *charge and collect* these user fees." Moreover, as appellants themselves concede, "the fee is entitled a 'user fee', [and therefore] a reasonable . . . inference would be that the fee is imposed on the persons using, *i.e.,* renting [the docking or storage space]." Despite the marinas' contentions to the contrary, nothing in Ordinance 765 contradicts the trial court's finding that the lessees are charged with the duty of paying the fee, and the marinas are charged with the duty of collecting it.[7]

As to the second of appellants' contentions (whether the $100 limits applies separately for dry and wet storage), the trial court found that the Ordinance "rather clearly limits the fee to $100 on *all* types of docking and storage, not merely docking in the water." That is, the court held that a boat owner who keeps his boat in dry storage for part of the year and in wet storage during the balance of the year is subject to a total maximum of $100 in annual fees. We agree. By the clear language of paragraph 1, and with respect to a given boat, the $100 maximum applies to *"all* rental charges for . . . docking, slip rental and storage, dry or wet." (Emphasis added.)

---

7. The marinas attempt to argue that the language contained in paragraph 1 of Ordinance 765 ("An annual fee of 5% . . . of all rental charges for the docking, slip rental and storage, dry or wet, of boats is hereby imposed") somehow conflicts with the trial court's holding. We disagree. When paragraph 1 is read in conjunction with the rest of the Ordinance, it is sufficiently clear that the annual fee applies to "all rental charges" that were *collected* by the businesses, and not simply those that have been *earned* by lessors but not yet collected.

As to the third of appellants' contentions (whether the fees are to be paid when they are earned, or when they are received by the marinas), the trial court held that, "[a]lthough the legislature has not expressly stated when the fee should be due, the intent appears to have been that the fee should be paid and collected when the rental charges are paid and collected." Acting within the spirit and intent of the Court of Appeals' holding in *Eanes* (*see, e.g.,* 318 Md. at 460, 569 A.2d 604), the trial court referred to parallel taxing statutes, the words of the Ordinance themselves, and general logic in therefore holding that Ordinance 765 was not unconstitutionally vague. Indeed, the marinas, who in their Brief failed to argue the validity of any opposing position (*e.g.,* that the Ordinance could be reasonably read to imply that the fees should be paid and collected when they are earned), themselves acknowledged that "[t]he circuit court's construction [that fees are due when collected] is the most reasonable under the circumstances[.]" Accordingly, we, too, decline to hold that Ordinance 765 was unconstitutionally vague in this regard; subject to the limitations set forth elsewhere in this opinion, fees are clearly due from the marinas when said fees are received.[8]

■ Erroneously relying on *Baltimore County v. Missouri Realty, Inc.,* 219 Md. 155, 148 A.2d 424 (1959), the marinas' last contention is that the admitted need of the City[9] to promulgate subsequent interpretative regulations—without the proper authority to issue same—necessarily renders the Ordinance impermissibly vague. With respect to that contention, the trial court held that "this issue is not ripe for a judicial decision" inasmuch as no guidelines or regulations had

---

**8.** *See* discussion in section II.C., *infra,* regarding the obligation of the marinas to collect said fees.

**9.** Robert M. Lange, the Havre de Grace city manager, stated in his deposition testimony that documents were being put together that explained the Ordinance and, perhaps more significantly, the procedure by which the fees will be collected.

yet been adopted. Nevertheless, as if to suggest that the City *did* have sufficient authority to promulgate rules and regulations under the Ordinance, the trial court did note that,

> [w]ith regard to this issue the Court of Appeals has recognized the "Dillon Rule" for many years. *Dennis v. City of Rockville*, 286 Md. 184, [186, 186] n. 1, 406 A.2d 284 (1979). The Rule states:
>
>> a *municipal corporation possesses and can exercise the following powers[, and no others]:* First, those granted in *express words;* second, those *necessary or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable. (Emphasis in original.)

Memorandum Opinion and Order at 18 (*citing* I.J. Dillon, *Municipal Corporations* § 237 (5th ed. 1911)) (footnote omitted in trial court opinion). The general application of the Dillon Rule, we (and, apparently, the trial court) believe, would permit the City to "delegate" determination of the exact procedure by which the fees will be collected.

In contrast, the case that appellants rely upon, *Missouri Realty,* is inapposite to the case at bar; moreover, to the degree relevant, *Missouri Realty* actually *supports* delegation (rather than prohibits it). *Missouri Realty* concerned the rezoning of a certain twenty-six acre tract of land owned by Missouri Realty, Inc. The immediately relevant question there concerned whether such a reclassification was a nondelegable legislative function, or, whether (on the other hand) it could be delegated to an administrative agency. 219 Md. at 161, 148 A.2d 424. The Court of Appeals ultimately held that

> the power to rezone in particular cases, by changing boundaries, as distinguished from the power to adopt a comprehensive zoning ordinance, which has been nowhere delegated and for which no statutory authority exists, may be, and has been, validly delegated to the County Board of Appeals.

*Id.* at 162, 148 A.2d 424.

The present case, of course, does not concern the power to adopt a comprehensive zoning ordinance, and therefore the

precise holding in *Missouri Realty* is inapposite. Neverthe-
less, in so *permitting* delegation under the facts there present-
ed, the Court of Appeals used language that is equally applica-
ble to the case at bar:

> There can be no question as to the power of the [state]
> Legislature to make such grants of powers of local govern-
> ment, whether to an existing municipal corporation or agen-
> cy, a specially constituted body, or an existing executive or
> administrative body such as county commissioners. The
> constitutional requirement of separation of powers is not
> applicable to local government. [citing cases.] *Just how
> much [delegatory] power is granted by a particular [state]
> statute [to a local government] is a question of statutory
> construction*[.]

*Id.* (emphasis added).

We believe that Chapter 261 authorized sufficient delegato-
ry power to local governments for promulgating interpretative
rules and regulations; *i.e.,* given the broad and general lan-
guage contained in Chapter 261, we hold that such delegatory
powers were either (1) necessary to, (2) fairly implied in, or (3)
incident to the powers expressly granted in that act.

### C.  LESSEES' REFUSAL TO PAY

Finally, on cross-appeal, the City contends that the lower
court's interpretation of Ordinance 765, paragraph 6B, defeats
the "intent and purpose" of that enactment. To some extent,
we agree.

In relevant part, Ordinance 765 provides as follows:

＊　　　＊　　　＊　　　＊　　　＊　　　＊

2.  The revenues shall be collected by all businesses, includ-
ing, but not limited to, all marinas . . . .

3.  A report listing the names of the lessees, the amount of
rent paid and the user fee due shall be submitted by all
businesses as set forth in paragraph 2, above, along with all

user fees collected. This report and the accompanying revenues shall be remitted to the City of Havre de Grace[.]

\* \* \* \* \* \*

[6]B. Any person or persons who fail to remit the fees due pursuant to this Ordinance as required in paragraph 3, above, as to each lessee subject to this Ordinance shall be subject to the penalties imposed by Ordinance for the commission of a municipal infraction as may be amended from time to time.

In interpreting these provisions, the trial court held that [c]ontrary to the arguments of the Plaintiffs [*i.e.*, the marinas], a marina cannot be penalized when a lessee fails to pay the fee. As this Court interprets Section 6(B), *the duty to submit the fee to the City is not incurred until the marina collects the fee. If a lessee refuses to pay the tax, then the marina has not collected the tax. Consequently the marina is not liable until it has collected the fee and failed to remit it to the City.*

(Emphasis added.)

In any event, the City's argument in this regard is purportedly based on an interpretation of the above-emphasized language. Specifically, the City appears to contend that this language wrongly implies (1) that the user tax is payable separately from the ordinary rental charges, and therefore (2) a lessee *may*, at his or her (or, perhaps, the marina's) discretion, choose to pay the rental charge but refuse to pay the user fee.[10] The City's main concern is that, under this interpretation of the trial court's opinion, the marinas could circumvent the user tax by simply declining to collect it; and therefore, since (pursuant to the trial court's opinion) "the duty to submit the fee to the City is not incurred until the marina collects the fee," the duty to submit the tax could never arise.

10. In its conclusion, the City urges us to affirm the trial court "except in so far as the Memorandum Opinion and Order purports to allow a lessee to refuse to pay user fees as separate from the payment of rental charges."

In response, the marinas state *their* main concern in this regard as follows:

Section 6B of the Ordinance could be used to penalize a marina for failing to remit fees which are "due" from the lessees even if the lessees have not paid the fees to the marina. This would certainly be a bizarre way to enforce payment *since a marina has no way to control or force renters to pay the fee.*

The marinas then add, by way of footnote in their brief, that

[t]he City has argued that a marina could force the payment of user fees from its lessees just as it could force the payment of rent. The City has cited no authority for this proposition. *While a marina could sue a recalcitrant slip renter in contract for unpaid rent, the marina would appear to have no legal standing to sue to collect user fees owed to the City.*

Thus, the *real* concerns that have been raised here may be summarized briefly. The City wants to ensure that the marinas are motivated to charge and collect the user fees; it therefore argues that the trial court's opinion inadequately expresses that obligation or, perhaps even worse, appears to create a loophole for the marinas' noncompliance with the Ordinance. We agree. On the other hand, the marinas do not appear to dispute the fact that, under the statute, they are obligated to charge and collect the user fees from lessees; they (the marinas) simply want to ensure that they have some way (in their words) "to control or force renters to pay the fee[.]" Although the trial court's opinion does not expressly so state, we believe that the Ordinance implicitly provides the marinas with a right of action against such recalcitrant lessees.

With respect to the City's concern, we note that (with respect to any given boat) the statute implicitly places a clear and affirmative obligation on the marinas to charge and collect the appropriate user tax *coincident with the time when said marinas collect their rental fees;* no other interpretation of

the statute is reasonable. Ordinance 765, ¶¶ 1–6.[11] Failure to "charge and collect" this tax timely, under the plain words of the Ordinance and all reasonable inferences derived therefrom, subject such noncomplying marinas to the penalties stated in the Ordinance. It is that simple.[12] To the degree that the trial court suggested that a marina could permissibly collect its rental fees without incurring liability to the City for the 5% user tax, it erred.

In the unfortunate event that a lessee declines to pay the full amount due to the marina (*i.e.*, if said lessee refuses to pay *both* the full amount of the mutually agreed upon rental charges *and* the full 5% user tax), the statute implicitly provides a right of action on behalf of the marina against the lessee for the entire balance due (including both the unpaid rental charges *and* the unpaid user tax).

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR HARFORD COUNTY WITH DIRECTIONS TO ENTER AN ORDER CONSISTENT WITH THIS OPINION. COSTS TO BE PAID 50% BY APPELLANTS/CROSS–APPELLEES AND 50% BY APPELLEES/CROSS–APPELLANTS.

---

**11.** Moreover, in at least two separate places, Ordinance 765 specifies that the ultimate obligation to "charge" and "collect" the fee is on the business (*i.e.*, the marina). *See* Ordinance 765, ¶¶ 2, 6.

**12.** Similarly, if a marina is not able to collect *any* rental fees from a particular lessee, or if a marina is only able to collect *a portion* of its rental fees, the statute provides (and a reasonable interpretation of the trial court's opinion correctly suggests) that the marina is only liable to the City for 5% of those rental charges actually collected. *See* Ordinance ¶¶ 1, 2, 3 (assessing a fee of 5% on "all rental charges," but requiring the marina to submit to the City those fees "collected").