## STATE *v.* CHERRY

[No. 83, September Term, 1960.]

146

*Decided January 17, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Clayton A. Dietrich, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Saul A. Harris* and *Howard G. Reamer, State's Attorney* and *Assistant State's Attorney of Baltimore City,* respectively, on the brief, for appellant.

No brief and no appearance for appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellee, John C. Cherry, was indicted by the Grand

Jury for the City of Baltimore, December 9, 1959, on two counts under Code (1957), Article 27, Section 558. The first count avers that the appellee was a common thief on December 1, 1959, and the second charges that he was a common thief on December 1, 1959, and has continued to be a common thief until the return of the indictment. The appellee filed a motion to quash the indictment and the appellant moved to dismiss the motion, as being contrary to Maryland Rule 725. The trial court granted the appellee's motion after construing it to be a motion to dismiss. The appellant appeals from the order granting the motion.

Of course, Maryland Rule 725 (a) abolished motions to quash indictments; the Rules should be closely adhered to, and any departure therefrom discouraged. However, since the motion actually made was, in effect, a motion to dismiss under our present procedure and the trial court treated it as such, we shall do likewise.[1]

---

1. Section 558 reads as follows:

"It shall be the duty of all police officers * * * in Baltimore City to arrest and take before some one of the station house justices in Baltimore City all persons whom they shall find in Baltimore City or upon any train, boat, car or other vehicle commonly used for the transportation of passengers which may be bound to or from Baltimore City whom they shall know or have good reason to believe are common thieves or pickpockets, and said police justices shall commit or bail such persons for trial before the Criminal Court of Baltimore; and if any person in Baltimore City shall be charged on oath before any station house justice in Baltimore City or before the judge of the Criminal Court of Baltimore with being a common thief or pickpocket, such justice or judge shall issue a warrant for the arrest of such person and commit or bail him for trial; and any person convicted in the Criminal Court of Baltimore of being a common thief or common pickpocket shall be fined not exceeding one thousand dollars or be imprisoned in jail or in the house of correction or in the penitentiary for a period not exceeding five years, or be both fined and imprisoned within the limits above prescribed in the discretion of the court; but if any person is arrested or indicted a second time or more for such offense, he shall be convicted only on proof that he has continued to be a common thief or pickpocket since his last conviction or acquittal, and it shall be necessary to charge in the indictment only that the person is a common thief or common pickpocket, and any

An analysis of the statute discloses that basically it is divisible into four segments. The first imposes a duty on police officials to arrest all persons whom "they shall know or have good reason to believe are common thieves or pickpockets." [2] The second sets the penalty upon conviction. The third segment makes provision for second "or more" offenders, stating that "it shall be necessary to charge in the indictment only that the person is a common thief * * *, and any evidence, either of facts or reputation, proving such person is habitually and by practice a thief * * *, shall be sufficient for his conviction if satisfactorily establishing the fact to the court or jury by whom he is tried * * *." And finally, the fourth provides that no conviction of the charge of being a common thief shall prevent a conviction for any particular act of larceny that he may have committed.

The learned trial judge held that the statute violates the due process clauses of both the Fourteenth Amendment of the Federal Constitution and Article 23 of the Maryland Declaration of Rights in two important aspects: (1) that it fails to set any positive guides or definite standards for determining the guilt of a person charged with being a common thief, and is, therefore, too vague, indefinite and uncertain; and (2) that it permits proof of guilt by reputation, alone. And he seems to have had certain misgivings concerning the provisions relating to arrests; although he did not specifically state these to be bases for his conclusions.

---

evidence, either of facts or reputation, proving that such person is habitually and by practice a thief or pickpocket, shall be sufficient for his conviction if satisfactorily establishing the fact to the court or jury by whom he is tried, and there shall be no discretion in any police officer or police justice to discharge or release any person who is by such proof before them or knowledge on their part shown to be a thief or pickpocket as aforesaid, but such person shall be bailed or committed for trial; and no conviction or charge of or for being a common thief or pickpocket shall prevent any such person from being tried and convicted for any particular act of larceny he may have committed."

2. As the defendant herein was charged with being a "common thief," we shall make little, if any, future reference to pickpockets.

I

The rule as to whether a penal statute is so vague and indefinite as to run afoul of the Due Process Clause of the Fourteenth Amendment (and Article 23 of the Maryland Declaration of Rights) has been stated many times by many courts. Perhaps, one of the most lucid expositions thereof is that of Mr. Justice Sutherland in *Connally v. General Construction Company,* 269 U. S. 385, 391, wherein it is said:

> "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law * * *.

> "The question whether given legislative enactments have been thus wanting in certainty has frequently been before this court. In some of the cases the statutes involved were upheld; in others, declared invalid. The precise point of differentiation in some instances is not easy of statement. But it will be enough for present purposes to say generally that the decisions of the court upholding statutes as sufficiently certain, rested upon the conclusion that they employed words or phrases having a *technical* or *other special* meaning, well enough known to enable those within their reach to correctly apply them, * * * *or a well-settled common law meaning,* notwithstanding an element of degree in the definition as to which estimates might differ, * * * or, as broadly stated by Mr. Chief Justice White in *United States v. Cohen Grocery Co.,* 255 U. S. 81, 92, 'that, for reasons found to result either *from the text of the statutes involved or the subject with which they dealt,* a

standard of some sort was afforded.' " (Emphasis added.)

This statement was repeated by Mr. Chief Justice Taft in *Cline v. Frink Dairy Co.,* 274 U. S. 445, 459-460. See also *Lanzetta v. New Jersey,* 306 U. S. 451, 453; *Musser v. Utah,* 333 U. S. 95, 97; *Winters v. New York,* 333 U. S. 507, 515. And there are a long line of Maryland cases in accord therewith. Among them, see *State v. Magaha,* 182 Md. 122, 125, 32 A. 2d 477; *Glickfield v. State,* 203 Md. 400, 404, 101 A. 2d 229; *Blake v. State,* 210 Md. 459, 462, 124 A. 2d 273; *Miedzinski v. Landman,* 218 Md. 3, 11, 145 A. 2d 220.

It is true that the offense of being a "common thief" is not one of common-law origin. However, there were many other offenses at common law designated as "common," *i.e.,* common scold, common brawlers, common barrators, etc. And by the time our statute, Section 558, was enacted in 1864, (and, indeed, for many years prior thereto) the word "common" had acquired a technical and well-known meaning in law, when used to designate a "common" offender. In *State v. Russell,* 14 R. I. 506, the defendant was charged with being a "common nightwalker," (in violation of a statute) without alleging any particular facts. The sufficiency of the complaint was challenged, as being only in general terms. In upholding the complaint, the Court said that, "the words 'common nightwalker' are words having a technical meaning in law, and it would therefore be superfluous to spread their definition on the record," and further stated, "the offense does not consist of particular acts but of an *habitual practice* evidenced by a series of acts." (Emphasis added.) A like ruling was made by the Court in *State v. Dowers,* 45 N. H. 543, in the same year that Section 558 was passed into law (where the accused was charged under a statute originating in 1791 [several amendments, however, having been made before 1864]), when the Supreme Judicial Court of New Hampshire held that the offense of being a "common nightwalker" was of such a definite meaning that it could be described in the indictment in general terms, stating, "the offense is made up of a series of acts which together form the *habit* of the individual's life, and constitute the offense." (Emphasis added.)

The defendant in *Com. v. McNamee,* 112 Mass. 285 was charged with being a "common drunkard" in 1872. The court stated that the law nowhere undertook to define how many instances of intoxication, in any given time, shall be deemed sufficient to fix upon a man the imputation of being a common drunkard; but the word "common" imports frequency, and it has been held that to convict a man upon such a charge, it must be shown that he is an *habitual* drunkard.

Again, in *State v. O'Conner,* 49 Me. 594, the accused was indicted under a statute of 1858, as a "common seller of intoxicating liquors." The statute of 1858 simply provided that no person shall be a common seller of intoxicating liquors, without stating any acts that would constitute the offense. A previous act of 1856 had defined a common seller as a person who had made a certain minimum number of sales within specified times, but it had been repealed. The presiding judge instructed the jury that under the act of 1858 "no particular number of sales was necessary to be proved to constitute a common seller; but that the jury must be satisfied * * * that selling intoxicating liquors was [the defendant's] common and ordinary business, * * *." This instruction was attacked on the ground that the jury should have been instructed that three distinct sales, at least, in connection with other evidence, were necessary to support a finding of guilt. The appellate Court held that the instruction was more generous to the defendant than she had a right to expect; that the word "common seller" was not a term of art, and had not been defined by statute nor by common law; consequently, its definition must be sought from the same sources that we seek the meaning of other words or phrases in our language. The Court then pointed out that the word "common," "as defined by Worcester, means *frequent, usual, customary, habitual,*" and stated that a "common seller," therefore, is one who sells frequently, usually, customarily, habitually.[3]

The above gives a brief outline of the background of the use and meaning of the word "common" in describing penal

3. For an interesting and instructive consideration of "common" offenses, statutory and common-law, see 2 Wharton, Criminal Law (12th Ed.), ¶¶ 1715-1720.

offenses at the time of the enactment of Section 558, and a few of the holdings of the Courts at, or about, that time; and they disclose that "common," when used in a penal statute without definition, meant essentially the equivalent of what it is said to mean in Section 558; namely, "a person [who] is habitually and by practice" a thief.[4] In following the terms of the statute, this Court, in considering the only case brought here under the statute, *World v. State,* 50 Md. 49, 54, stated that, "in order to justify a conviction of a party of the offense created by the Act there must be proof * * * sufficient to satisfy the jury that the party accused is by *practice* and *habit* a thief."[5]

There are, quite naturally, later decisions that shed additional light upon the question under consideration. The New Jersey legislature enacted a statute (Revision of 1898, P. L. 942 [2 Comp. St. 1910, p. 1926, ¶ 1]) with a provision closely akin to Section 558, although it will be noted that no attempt was made therein to define what the legislature meant by the word "common." It provided, *inter alia,* that "all * * * common drunkards, common thieves, burglars or pickpockets, common nightwalkers, and common prostitutes, shall be deemed and adjudged to be disorderly persons." The provision thereof relating to "common burglars" was considered in *Levine v. State,* 166 A. 300 (N. J. 1933), and, not only was the meaning of the word "common" held to be technical and well-known, but the question of the constitutionality of the act was determined. In upholding its constitutionality against a challenge of a violation of due process, the Court of Errors and Appeals of New Jersey aptly stated, at page 302:

> "The manifest purpose of this legislation is to check evil in its beginning, and thus to insure the public safety. The statute is not arbitrary or unrea-

4. There are statutes in several of the States that specifically define the meaning of "common thief" as used therein.

5. It is interesting to note that the defendant in the World case was represented by Louis Hochheimer, the eminent author and authority on criminal law, and, although the case was tried only 14 years after the enactment of Section 558, no question was raised concerning the act being vague or indefinite.

sonable. It provides for the apprehension and punishment of a class that menaces the security of persons and property. The word 'common,' when so employed, has a technical meaning, well understood in the law. It imports frequency. [citations] The common law made indictable common scolds, common brawlers, common barrators, common drunkards, nightwalkers, and persons habitually and openly lewd. * * *

"A 'common burglar,' therefore, is one who by practice and habit is a burglar, and it is clearly within the power of the Legislature to classify such as disorderly persons. Of course, to justify a conviction in a case of this character, the proofs must establish that status at the time of the defendants' apprehension."

Thus, the highest Court of New Jersey held that the word "common," when used in a penal statute designating "common" offenders, had a technical and well-recognized meaning, which was in complete accord with the *World* case, *supra,* and Section 558. And it is interesting to note that the Supreme Court of the United States, in *Lanzetta v. New Jersey, supra,* wherein the word "gang" in a penal statute, without definition, was held too vague and indefinite, approved by implication the holding in the *Levine* case, stating, "the court in that case [*Levine*] found the meaning of 'common burglar' there involved to be derivable from the common law."

Professor Wigmore seems in accord, when he states under the heading "Common Offenders" the following: "* * * [T]he most natural and cogent sort [of evidence to establish proof of common offender] will be a series of particular acts of the kind charged. The only question would be as to the sufficiency of the number of these acts to justify the epithet of 'common' or 'habitual'; and this will not affect the admissibility of any particular instance (unless so far as the statute specifies a minimum number), but will be a matter for the jury, under instructions of law from the judge." 1 Wigmore, *Evidence* (3rd Ed.), ¶ 203.

We think the authorities cited above clearly demonstrate that the word "common" had at the time of the enactment of Section 558, and still has, a technical and well-established meaning in law, which, with the remainder of the statute, fixes an ascertainable standard of guilt, rendering the act sufficiently definite, so that a person of ordinary intelligence will not be left in doubt as to the nature of the acts condemned.

The trial court relied heavily upon the *Lanzetta* case, *supra.* It is clearly distinguishable from the case at bar. The New Jersey legislature passed a penal statute creating a new offense, which stated: "Any person not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons, * * * is declared to be a gangster * * *." The Court held that the word "gang" was not defined in the act; it had no technical meaning in law; and its meanings, as indicated in dictionaries and sociological writings, were numerous and varied. For these, and other causes, the Court held the statute too vague to be sustained. It is so readily distinguishable from the instant case that we deem it unnecessary to discuss it further.

II

Having decided the basic question as above indicated, we do not reach any other constitutional questions at this time. The indictment charged the appellant with the offense of being a "common thief." This mode of accusation in general terms is permitted by the statute, Section 558. Cf. Code (1957), Article 27, Section 616; *Neusbaum v. State,* 156 Md. 149, 143 A. 872; *Kelley v. State,* 181 Md. 642, 31 A. 2d 614. The accused did not request nor demand the particulars of the offense, but elected to challenge the constitutionality of the act by his motion to dismiss. This, we think, properly brought before us the question of the alleged vagueness and indefiniteness of the statute, but, without the aid of any facts being developed in a trial below, or a bill of particulars setting forth the facts relied upon by the State to support the charge in the indictment, the other constitutional questions are left in a purely abstract state.

This Court has held many times that constitutional questions are not to be dealt with abstractly. Among the de-

cisions, see *Givner v. Cohen,* 208 Md. 23, 35, 37, 116 A. 2d 357; *Tanner v. McKeldin,* 202 Md. 569, 580, 97 A. 2d 449. In *Baker v. Grice,* 169 U. S. 284, 292, the Court said: "It is a matter of common occurrence—indeed, it is almost the undeviating rule of the courts, both state and Federal—not to decide constitutional questions [of the validity of a State Act] until the necessity for such decisions *arises in the record* before the court." (Emphasis supplied.) This statement was repeated in *Arkansas Oil Co. v. Louisiana,* 304 U. S. 197, 202, and by this Court, almost verbatim, in *Jeffers v. State,* 203 Md. 227, 230, 100 A. 2d 10. The rule was stated slightly differently in *Burton v. United States,* 196 U. S. 283, 295: "It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case."

We turn now to the case at hand to ascertain if an absolute necessity arises in the record before us to determine other constitutional questions relating to Section 558. 16 C.J.S., *Constitutional Law,* ¶ 84, says: "As a general rule, in criminal prosecutions, accused has the right to assert the invalidity of the law * * * under which he is being prosecuted, but he must show that his rights are adversely affected by the statute or ordinance, and, more particularly, that his rights are thus affected by the particular feature of the statute alleged to be in conflict with the Constitution.[6] It is not sufficient that the statute may impair the rights of others. An accused affected by one portion may not plead the invalidity of another portion of the same statute not applicable to his case, where the invalidity of the portion questioned will not render void the entire act or at least some provision that does affect him adversely; * * *."

The record before us fails to disclose what feature, or features, of the act are claimed to affect adversely the rights of the accused, or the manner or mode in which those rights are claimed to be affected. If we were to consider and determine,

---

6. At this point Heath v. State, 198 Md. 455, 85 A. 2d 43, is cited with many other authorities. Cf. also Crouse v. State, 130 Md. 364, 371, 100 A. 361.

abstractly, all of the possible constitutional questions that may be raised under the statute, it would necessitate a consideration and determination of many contingencies and eventualities that possibly, and very probably, would have no bearing on, nor relation to, the appellant's case, when the actual facts are developed. We think that authority, reason, and the practical administration of justice join in preventing the consideration of additional potential questions of a constitutional nature at this time. We shall, therefore, leave open all constitutional questions not decided herein, and we shall consider and determine them, when, and if, they arise.

*Order reversed, and case remanded for trial; the Mayor & City Council of Baltimore to pay the costs.*