653 A.2d 468

**TIDEWATER/HAVRE DE GRACE, INC. et al.**

v.

**The MAYOR AND CITY COUNCIL OF HAVRE DE GRACE.**

**No. 153, Sept. Term, 1993.**

Court of Appeals of Maryland.

Feb. 9, 1995.

Robert J. Carson (Ronald G. Dawson, Smith, Somerville & Case, all on brief), Baltimore, for petitioners.

Frederick J. Hatem, Jr. (Dewey Brian Stanley, Reed & Hatem, all on brief), Bel Air, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

In this appeal, we shall consider whether Ordinance No. 765 exceeds the authority granted to the City of Havre de Grace by the General Assembly and/or is void for vagueness. Resolving the declaratory judgment action filed by Tidewater/Havre de Grace, Inc. and Penn's Beach Arena, the petitioners, to test the validity of the Ordinance, the trial court found in favor of the Mayor and City Council of Havre de Grace, the respondent, on both issues, granting its motion for summary judgment and denying the petitioners'. Interpreting paragraph 6.B. of the Ordinance, the court concluded:

> Contrary to the arguments of the Plaintiffs, a marina cannot be penalized when a lessee fails to pay the fee. As this Court interprets paragraph 6(B), the duty to submit the fee to the City is not incurred until the marina collects the fee. If a lessee refuses to pay the tax, then the marina has not collected the tax. Consequently the marina is not liable until it has collected the fee and failed to remit it to the City.

Memorandum Opinion and Order, 98 Md.App. 218, 234, 632 A.2d 509, 517. Both the marinas and the City appealed.

Addressing the petitioners' appeal, the Court of Special Appeals agreed with the trial court that the City acted with authority and that the Ordinance was not unconstitutionally vague; hence, it affirmed the judgment of the trial court in that regard. The City's cross-appeal challenged the court's interpretation of paragraph 6.B. On that issue, the intermediate appellate court reversed, concluding that "the statute

implicitly places a clear and affirmative obligation on the marinas to charge and collect the appropriate user tax *coincident with the time when said marinas collect their rental fees."* Tidewater/Havre de Grace, Inc. v. Mayor of Havre de Grace, 98 Md.App. 218, 235, 632 A.2d 509, 518 (1993). It added, "the statute implicitly provides a right of action on behalf of the marina against the lessee for the entire balance due (including both the unpaid rental charges *and* the unpaid user tax)." *Id.* at 236, 632 A.2d at 518. We granted the petitioners' petition for certiorari.

## I.

In 1992, the General Assembly of Maryland enacted Chapter 261 of the Laws of Maryland ("Chapter 261"), now codified as Maryland Code (1957, 1994 Repl.Vol.), Art. 24, § 9–605. As introduced Chapter 261 permitted "[a] municipal corporation [to] impose by ordinance a user fee on charges for the docking and storage of boats" and limited that fee to a certain percentage of the total rental charges.[1] As enacted, in addition to the foregoing, by amendment, Chapter 261 included a further limitation on the amount of user fees that could be charged "per boat slip."

Both as introduced and enacted, the title of the bill was "An Act concerning Municipal Corporations—Boat Slip User Fee." Moreover, while the preamble stated that the purpose of the statute was to "authoriz[e] a municipal corporation to impose a user fee on charges for the docking and storage of boats," it also indicated that it was "generally relating to authorization for a municipal corporation to impose a boat slip user fee."[2]

---

1. Introduced as Senate Bill 521, in the original draft, the percentage of rental charges was ten percent. As passed that percentage was five percent.

2. As enacted, Chapter 261 said, in pertinent part:

   **An ACT concerning Municipal Corporations—Boat Slip User Fee**
   FOR the purpose of authorizing a municipal corporation to impose a user fee on charges for the docking and storage of boats; limiting the total user fees collected per year to a certain amount; limiting the

Acting pursuant to the authority granted by Chapter 261, the respondent enacted Ordinance No. 765. That Ordinance imposed "[a]n annual fee of 5%, not to exceed One Hundred Dollars ($100), of all rental charges for the docking, slip rental and storage, dry or wet, of boats," to be "collected by all businesses, including, but not limited to, all marinas, establishments, or individuals within the Havre de Grace City limits that rent space for boat docking, boat slip rental and boat storage." Paragraphs 1 and 2. It also provided for the remitting of the user fees, along with a report "listing the names of the lessees, the amount of rent paid and the user fee due" to the City, on a semi-annual basis, paragraph 3,[3] the

---

rate of the user fee to a certain percentage; requiring a municipal corporation to use the revenue from the user fee for certain purposes; and generally relating to authorization for a municipal corporation to impose a boat slip user fee.

\* \* \* \* \* \*

Section 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

**Article 24—Political Subdivisions—Miscellaneous Provisions**

9–605.

(A) A municipal corporation may impose by ordinance a user fee on charges for the docking and storage of boats.

(B)(1) Subject to the limitation in paragraph (2) of this subsection, a municipal corporation shall set the rate of the user fee.

(2) The rate of the user fee may not exceed 5% of the rental charges for the docking and storage of boats.

(C) The total amount of user fee charged per boat slip may not exceed $100 annually.

(D) A municipal corporation shall use any revenue from the user fee authorized under this section to maintain and enhance:

(1) Water quality;

(2) Water and wastewater treatment facilities;

(3) Marinas;

(4) Law enforcement;

(5) Public safety; or

(6) Fire services.

3. Paragraph 3 provides:

A report listing the names of the lessees, the amount of rent paid and the user fee due shall be submitted by all businesses as set forth in paragraph 2, above, along with all user fees collected. This report and the accompanying revenues shall be remitted to the City of Havre de Grace on a semi-annual basis with the first receipt being due no later than March 1 of each year and the second receipt being due no later than September 1 of each year. The funds remitted by March 1

audit of the financial records of any affected business, paragraph 4, and civil penalties to be imposed upon businesses that fail to comply. Paragraph 6.[4]

■ It is well-settled that, pursuant to Article XI–E, Section 5 of the Maryland Constitution, a municipality may levy only such type of tax, license fee, franchise tax or fee, that is specifically authorized by the General Assembly. *See Campbell v. Annapolis*, 289 Md. 300, 305, 424 A.2d 738, 741 (1981). *See also Allied Vending v. City of Bowie*, 332 Md. 279, 296, 631 A.2d 77, 85 (1993). The threshold issue that is presented, therefore, is whether the tax imposed by Ordinance 765, which, by its express terms, is applicable to both the wet and dry storage of boats, exceeds the authority granted by the General Assembly to the City of Havre de Grace by enacting Chapter 261.

The parties disagree as to the intended scope of Chapter 261. The petitioners contend that it authorizes imposition of user fees on only one form of boat storage, boat slips. To arrive at that conclusion, the petitioners argue that Chapter 261 is ambiguous. In support of that conclusion, they point out that Chapter 261 refers both to "boat slip" and the

---

shall cover the period beginning August 1 through January 31. The funds remitted by September 1 shall cover the period beginning February 1 through July 31.

**4.** Paragraph 6 provides:

6.A. Any person or persons who fails to submit any report pursuant to this Ordinance as required in paragraph 3, above, as to each lessee subject to this Ordinance shall be deemed to have committed a municipal infraction and shall be subject to the penalties imposed by Ordinance for the commission of a municipal infraction as may be amended from time to time.

B. Any person or persons who fail to remit the fees due pursuant to this Ordinance as required in paragraph 3, above, as to each lessee subject to this Ordinance shall be subject to the penalties imposed by Ordinance for the commission of a municipal infraction as may be amended from time to time.

C. Delinquent charges of One and One Half Percent (1½%) per month of the amount of user fees due shall be assessed, accruing from the day after the due date as stated in paragraph 3, above, until the fee and fines are paid in full.

"docking and storage of boats." Since "boat slip" refers to a specific kind of in-the-water storage, but "docking and storage of boats" is sufficiently broad to encompass both wet and dry storage of boats, it is unclear, they continue, what the Legislature's intention was when it enacted Chapter 261. When the context of the statute is considered and the rules of statutory construction applied, they argue that the intention becomes clear, to impose user fees only on boat slips.

The respondent does not dispute the meaning the petitioners attribute to the term "boat slip" or the phrase, "docking and storage of boats," or the fact that both are used in the body of the statute. It does draw a different conclusion from those facts, however.[5] The respondent posits that the statute is clear and unambiguous. Accordingly, it concludes that the fees imposed by Ordinance 765 are expressly authorized by Chapter 261. That being so, it contends that the petitioners' argument to the contrary requires the creation of ambiguity where none otherwise exists.

■ The threshold issue in this case involves the determination of the scope of Chapter 261. That, in turn, requires discerning its meaning, *i.e.*, the Legislature's intent in enacting it. It is well-settled that when the meaning of a statute— its legislative intent—is at issue, the court's inquiry begins with the words of the statute, and ordinarily, also ends there. *Gargliano v. State*, 334 Md. 428, 435, 639 A.2d 675, 678 (1994); *Thanos v. State*, 332 Md. 511, 522, 632 A.2d 768, 773 (1993); *Harris v. State*, 331 Md. 137, 145–46, 626 A.2d 946, 950 (1993);

---

5. The word "dock" means a

    natural or artificial inlet or hollow in which a ship can be received ... a[n] artificial basin or enclosure in connection with a harbor or river for the reception of ships and equipped with means of controlling the water height ... the waterway extending between two piers or projecting wharves or cut into the land for the reception of ships.

Webster's Third New International Dictionary 665 (3rd ed. 1978). Thus, "docking" refers to in-the-water storage of a boat. The term "storage," on the other hand, is "a place for storing." Webster's Third New International Dictionary 2252 (3rd ed. 1978). As it pertains to boats, which can be stored on land as well as in the water, storage encompasses both wet and dry storage.

*Ball v. United Parcel Service, Inc.*, 325 Md. 652, 656, 602 A.2d 1176, 1178 (1992). If the words of the statute are clear and free from ambiguity, we need not look further; there ordinarily is no need to look beyond the words of the statute to determine its meaning or scope. *Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448, 452 (1994); *Harris, supra*, 331 Md. at 146, 626 A.2d at 950; *Ferguson Trenching Co., Inc. v. Kiehne*, 329 Md. 169, 177, 618 A.2d 735, 739 (1993); *Scheve v. Shudder, Inc.*, 328 Md. 363, 371–72, 614 A.2d 582, 586 (1992). Nevertheless, "[i]n the interest of completeness . . . we may look at the purpose of the statute and compare the result obtained by the use of its plain language with that which results when the purpose of the statute is taken into account," *Harris*, 331 Md. at 146, 626 A.2d at 950, as well as such evidence as "a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal. . . ." *Wynn v. State*, 313 Md. 533, 539, 546 A.2d 465, 468 (1988) (quoting *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 515, 525 A.2d 628, 632–33 (1987)). "[W]here statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, [we] are not at liberty to disregard the natural import of words with a view towards making the statute express an intention which is different from its plain meaning." *Fikar v. Montgomery County*, 333 Md. 430, 434–35, 635 A.2d 977, 979 (1994) (quoting *Potter v. Bethesda Fire Dep't, Inc.*, 309 Md. 347, 353, 524 A.2d 61, 63–64 (1987)) (quoting *State v. Fabritz*, 276 Md. 416, 421–22, 348 A.2d 275, 278 (1975), *cert. denied*, 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976) (citations omitted)). We are not, in short, at liberty to create an ambiguity where none otherwise exists.

█ Chapter 261 is clear and unambiguous. By its plain language, it authorizes a municipal corporation to "impose by Ordinance a user fee on charges for the docking and storage of boats." Although it limits the rate of the user fee to a maximum of "five percent of the rental charges for the

docking and storage of boats," if the mode of storage is by means of a boat slip, it further caps the total amount of user fees to be charged to not more than $100 per year.

Contrary to the petitioners' argument, the mere reference to both "docking and storing" and "boat slip" in the body of the statute, even when coupled with the provision for a different maximum fee in connection with the latter, does not render the statute ambiguous. Nor does the fact that the two kinds of storage are treated differently render the statute ambiguous.

The broader term "docking and storage" encompasses "boat slips." And the provision of a more specific limitation for boat slips does not in any way negate the requirement of, or the necessity for, a different rate for other forms of storage. Indeed, the scheme that treats the two separately, there being a basis for the difference, simply addresses the various forms of boat storage. Consequently, although the term "dry" storage is never specifically used, the more general term "docking and storage," encompasses "dry" storage, just as surely as it encompasses "boat slips," a form of wet storage. Accordingly, it is incorrect to argue that the statute does not encompass "dry" storage.[6] Since wet storage and dry storage are discrete forms of boat storage, there is nothing inconsistent in a statute which treats them differently. Therefore, providing for imposition of a user fee upon the total rental charges for the docking and storage of boats, not to exceed 5% of the total rental charges, is not inconsistent with further limiting the amount of user fees applicable to boat slips.

---

**6.** Even if we agreed with the petitioners that Chapter 261 is ambiguous, we would not reach the result that the petitioners reach. When called upon to construe a statute, we are mindful that, "absent a clear intent to the contrary a statute is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Buckman*, 333 Md. 516, 523–24, 636 A.2d 448, 452 (1994); *Government Employees Ins. Co. v. Insurance Commissioner*, 332 Md. 124, 132, 630 A.2d 713, 717 (1993). The petitioners' reading of the statute to encompass only "boat slips" would read out of the statute the conceded other term, "storage," thus rendering it surplusage, superfluous, meaningless, or nugatory.

■ Reviewing, in the interest of completeness, the external manifestations of legislative intent, produces the same result. Imposing a user fee on all forms of boat storage is consistent with the purpose of the statute, to permit municipal corporations to raise money to be used for certain specified purposes. *See* Preamble to Chapter 261 ("requiring a municipal corporation to use the revenue from the user fee for certain purposes") and Section 9–605(D), setting out the purposes for which the fees are to be used. The petitioners point out that the title and the preamble both refer to boat slip user fees. Having concluded that the statute is ambiguous, they argue that this supports their narrow construction of Chapter 261. We agree that, read together, the title and preamble are ambiguous; nevertheless, given the purpose of the legislation, and the clear and unambiguous language used in the body of the statute, the fact that the preamble also clearly states as one of the statute's purposes, "authorizing a municipal corporation to impose a user fee on charges for the docking and storage of boats," and that resort to the title and preamble is to resolve, rather than create, ambiguity, we believe they confirm our reading of Chapter 261.[7]

---

7. We agree with the petitioners "that the title of an act is relevant in ascertaining the legislative intent and purpose," *Smelser v. Criterion Insurance Company,* 293 Md. 384, 390, 444 A.2d 1024, 1028 (1982), of a statute. Except when the issue is the validity of the statute, it is important when the ambiguity of the statute has been established, as we have previously pointed out and the petitioners seem to agree. Having determined that the statute is not ambiguous, the purpose of reviewing the title and the preamble is to confirm the meaning derived from a review of the plain language of the statute, *see Rose v. Fox Pool Corp.,* 335 Md. 351, 361, 643 A.2d 906, 911 (1994), not to refute that meaning. The title, in other words, should only be used to resolve an ambiguity, never to create one.

This Court has occasionally examined the external manifestations of legislative intent of a particular statute, notwithstanding the clarity of the language of the statute, and reached a result contrary to that produced by the plain language of the statute. *See, e.g., Blaine v. Blaine,* 336 Md. 49, 646 A.2d 413 (1994); *Lincoln Nat'l Life Ins. Co. v. Insurance Comm'r of State,* 328 Md. 65, 612 A.2d 1301 (1992). Indeed, as we recently remarked in *Lincoln Insurance Co.,* 328 Md. at 77–78, 612 A.2d at 1307:

Nor are we satisfied, as the petitioners argue, that its legislative history requires a different result. As introduced, Chapter 261 permitted municipal corporations to impose a user fee, not to exceed ten percent of the rental charges, for the docking and storage of boats. Except in the title and preamble, it did not mention "boat slips." The Bill was amended to include the provision limiting the user fees per boat slip and concomitantly to insert in the preamble the phrase, "limiting the total user fees collected per year to a certain amount." These amendments, the petitioners maintain, are an indication that the Legislature intended the statute to encompass only boat slip charges:

> Any doubt about the intended breadth of Chapter 261 is removed by the review of the history of the adoption of these amendments. The $100 annual limitation 'per boat slip' is the only limitation in Chapter 261 which is equivalent to a 'certain amount.' If the addition of the $100 *per boat slip* limitation had the effect of limiting "*total* user fees collected per year to a certain amount," as the General Assembly stated (and clearly understood) that it would, then logic dictates that boat slips were the only intended subjects

---

" 'The starting point in every case involving construction of a statute is the language itself.' But ascertainment of the meaning apparent on the face of a single statute need not end the inquiry. This is because the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of *persuasive* evidence if it exists.' The circumstances of the enactment of particular legislation may persuade a court that '[the Legislature] did not intend words of common meaning to have their literal effect.' " (Quoting *Kaczorowski*, 309 Md. 505, 514, 525 A.2d 628, 632 (1987) and *Watt v. Alaska*, 451 U.S. 259, 265–66, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80, 88 (1981)) (citations and footnotes omitted, emphasis added). That simply is not the case with this statute. As we have previously pointed out, the stated purpose of the statute (to generate revenue for the local government) is quite consistent with the meaning produced by the plain language of the statute.

of Chapter 261 and that the General Assembly did not intend it to apply to other forms of boat storage. Petitioners' Brief at 18–19.

As previously indicated, the amendment to limit the amount of user fees per boat slip did not render the statute ambiguous. The inclusion of the limitation in the preamble, however, did make the preamble, read with the title, also as indicated earlier, ambiguous. That, as we have already noted, does not warrant construing the substantive portion of the statute so as to reach a result inconsistent with its plain language. There simply is nothing in the legislative history to support the petitioners' conclusion that the Legislature intended the statute to apply solely to boat slips. In addition, although it is true that the $100 limitation is the only limitation equal to a "certain amount," it is not true that this is the only limitation in the Act. In fact, both prior to and subsequent to the amendment of Chapter 261, the Act's purpose included language stating that it would "[limit] the rate of the user fee to a certain percentage." Accordingly, while Chapter 261 expressly provides that the $100 limit applies to boat slips, it also expressly provides for a 5% limitation to be applied to the "docking and storage of boats." [8]

Ordinance 765 provides, in pertinent part, that "an annual fee of 5%, not to exceed One Hundred Dollars ($100), of all rental charges for the docking, slip rental and storage, dry or wet, of boats is hereby imposed." Having determined that the plain language of Chapter 261 encompasses both boat slips and other means of storing boats, including dry storage, it follows that Ordinance 765 does not exceed the authority granted the respondent to impose user fees on the "docking and storage of boats."

## II.

"It is well settled that a statute which prohibits the doing of an act in terms so vague that persons of ordinary intelligence

---

8. The petitioners' argument is not helped by reference to Maryland Code (1957, 1994 Repl.Vol.), Art. 24, § 9–602.

must necessarily guess at its meaning and differ as to its application violates the constitutional guarantee of due process of law." *Blum v. Engelman,* 190 Md. 109, 113, 57 A.2d 421, 422 (1948). *See also Condon v. State,* 332 Md. 481, 499, 632 A.2d 753, 762 (1993); *Williams v. State,* 329 Md. 1, 8, 616 A.2d 1275, 1278 (1992); *Bowers v. State,* 283 Md. 115, 121, 389 A.2d 341, 345 (1978); *State v. Cherry,* 224 Md. 144, 149, 167 A.2d 328, 330 (1961); *State v. Magaha,* 182 Md. 122, 125, 32 A.2d 477, 478–79 (1943). On the other hand, as we stated in *Eanes v. State,* 318 Md. 436, 460, 569 A.2d 604, 615, *cert. denied,* 496 U.S. 938, 110 S.Ct. 3218, 110 L.Ed.2d 665 (1990):

A statute is not vague when the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, common law, dictionaries, treatises, or even the words themselves, if they possess a common and generally accepted meaning.

(Quoting *Bowers v. State,* 283 Md. 115, 125, 389 A.2d 341, 347 (1978)).

The petitioners argue that Ordinance No. 765 is void for vagueness, that it is so "riddled with uncertainties" that it violates the constitutional guarantee of due process of law.[9] The uncertainty is reflected, in particular, they assert, in the Ordinance's failure clearly to address on whom the fee is imposed, how the $100 limitation is to be applied, and how the collection system it prescribes is intended to work. First, the petitioners observe, "while it is clear that the Ordinance attempts to impose some sort of fee on someone, it is not at all clear on whom the fee is imposed." Although cognizant that the Ordinance uses the term "user fee," they contend that interpretation of the fee as a user fee is belied by the Ordinance's title and preamble, both of which refer to user

---

9. Both the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights, protect citizens from vague statutes. *See Eanes v. State,* 318 Md. 436, 459, 569 A.2d 604, 615, *cert. denied,* 496 U.S. 938, 110 S.Ct. 3218, 110 L.Ed.2d 665 (1990). *See also Pitsenberger v. Pitsenberger,* 287 Md. 20, 27, 410 A.2d 1052, 1056, *appeal dismissed,* 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10, *reh'g denied,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980).

fees on charges. *See* paragraph 1 of the Ordinance, which references an "annual fee of 5% ... of all rental charges." The petitioners interpret these references as imposing the fee not on users, but on the charges themselves, hence on the businesses that collect them.

The petitioners' second point is a related one. It is that Ordinance 765 does not address how the $100 user fee limit is to be applied, that is, whether it is to be applied on a per renter, per space or per boat basis. Recognizing that the Court of Special Appeals determined that it was to be applied per renter, but noting the failure of the Ordinance to provide "a detailed calculus" in connection with its application, they suggest that the more logical interpretation is that it imposes the fee on the businesses.

Finally, the petitioners argue that designating semi-annual reporting periods without specifying how they relate to when the rents are earned or are received by the businesses "provides no intelligible guidance to the persons obligated to remit the fees as to how the collection system is intended to work." Petitioners' Brief at 31–32. The petitioners also see paragraph 3 of the Ordinance as having been interpreted inconsistently: while the tax is purportedly imposed on the renters, as the Court of Special Appeals interprets it, it requires the businesses to pay the City 5% of whatever rent they collect, thus, actually imposing the liability on the businesses whenever the renters fail to pay. This inconsistency is compounded, they assert, by the fact that the Ordinance does not provide a mechanism for the marinas to recover from the non-paying renters.

Ordinance 765 is not a model of clarity on all of the issues it addresses. Consequently, it is necessary to construe it, using the canons of statutory construction for that purpose. *See Howard Research and Dev. Corp. v. Concerned Citizens for Columbia Concept,* 297 Md. 357, 364, 466 A.2d 31, 34 (1983); *Clarke v. County Commissioners for Carroll County,* 270 Md. 343, 349, 311 A.2d 417, 421 (1973); *Baltimore City v. First Methodist Episcopal Church,* 134 Md. 593, 603, 107 A.

351, 355 (1919). In that regard, the Ordinance must be read as a whole, *see Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 466–67, 620 A.2d 340, 342 (1993), and the words used must be given their usual and common signification. *See Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483, 486 (1992). Moreover, it is the policy of this Court to favor an interpretation that upholds the validity of an ordinance, *see R.S. Constr. Co. v. Baltimore,* 269 Md. 704, 706, 309 A.2d 629, 630 (1973) ("The oft expressed presumption in favor of the constitutionality of a statute, is no less true of an ordinance, be it county, or city.") (citations omitted), one which would render the ordinance constitutional over one that would render it unconstitutional. Thus, every presumption favoring its validity will be indulged and the Ordinance will be declared unconstitutional only if it plainly contravenes the Constitution. *See Baltimore v. Charles Center Parking, Inc.,* 259 Md. 595, 598, 271 A.2d 144, 145 (1970); *Gino's of Maryland, Inc. v. Baltimore,* 250 Md. 621, 636, 244 A.2d 218, 226–27 (1968); *Baltimore Transit Co. v. Metropolitan Transit Authority,* 232 Md. 509, 520–21, 194 A.2d 643, 649 (1963). *See also Anderson v. State,* 328 Md. 426, 438, 614 A.2d 963, 968 (1992) ("A construction of a statute which would cast doubt on its constitutional validity should be avoided.").

An annual fee "for the docking, slip rental and storage, dry or wet of boats," is imposed by Ordinance No. 765. Paragraph 1. It also requires that the revenues thereby produced "be collected by" businesses, including marinas, within the Havre de Grace City limits that rent space for that purpose. Paragraph 2. Those businesses are required by the Ordinance to submit to the City a report on a semi-annual basis containing the names of the lessees, the amount of the rent paid and the user fees due. Paragraph 3. Those businesses required to "charge and collect" user fees are also subject to audit by the City, at its option. Paragraph 4.

Moreover, the Ordinance refers to the annual fee as a "user fee." *See* paragraphs 3, 4, 5, and 6.C. Accordingly, notwithstanding the petitioners' arguments to the contrary, Ordinance

765 places responsibility for paying the fee on those who rent docking and storage from the marinas and the responsibility for charging and collecting the fee on the marinas.

The contention that the Ordinance is vague because it does not make clear whether the $100 limit applies separately for dry and wet storage is also without merit. As both the trial and intermediate appellate courts held, paragraph 1 makes crystalline the reach of the $100 limit. It applies to "all rental charges for the docking, slip rental and storage, dry or wet, of boats." Thus, we agree with the intermediate appellate court, "by the clear language of paragraph 1, and with respect to a given boat, the $100 maximum applies to "all rental charges for ... docking, slip rental, and storage, dry or wet."

Nowhere in Ordinance 765 is there a provision concerning when user fees for the docking and storage of boats accrue, though the responsibility for charging, collecting, and remitting those fees are placed, by the express terms of the Ordinance, on the businesses renting that space. Paragraph 3 spells out when the fees are to be remitted—on a semi-annual basis, when "all user fees [are] collected." Far from precise, that paragraph goes on to indicate that "[t]he funds remitted by March 1 shall cover the period beginning August 1 through January 31....[and t]he funds remitted by September 1 shall cover the period beginning February 1 through July 31." When read in light of the provision detailing when the fees are to be remitted, it is reasonably interpreted as requiring that funds collected during the specified periods are to be remitted to the City at those times. Indeed, that is the most reasonable interpretation of the Ordinance. Accordingly, Ordinance 765 is not unconstitutionally vague.

The circuit court construed paragraph 6.B. as imposing on the businesses the duty to remit user fees only when collected. It concluded, "[i]f a lessee refuses to pay the tax, then the marina has not collected the tax. Consequently the marina is not liable until it has collected the fee and failed to remit it to the City." The Court of Special Appeals did not disagree.

*See* 98 Md.App. at 235–36, 632 A.2d at 517–18. The intermediate appellate court went further, however, and held: "[T]he statute implicitly places a clear and affirmative obligation on the marinas to charge and collect the appropriate user tax *coincident with the time when said marinas collect their rental fees;* no other interpretation of the statute is reasonable." 98 Md.App. at 235–36, 632 A.2d at 518. Under that interpretation, the critical inquiry is whether the marina has collected any of its rental fee. To the extent that it has not, although the rent be due, then it incurs no liability for failure to collect the required user fee. Conversely, if the marina collects a portion, or all, of its rent, then it is responsible for remitting the user fee even though it may not have collected any part of that fee. 98 Md.App. at 236 n. 12, 632 A.2d at 518 n. 12. Addressing the remedy of the marina that remits user fees it has not collected, the Court of Special Appeals then observed: "the statute implicitly provides a right of action on behalf of the marina against the lessee for the entire balance due (including both the unpaid rental charges *and* the unpaid user tax)." *Id.* at 236, 632 A.2d at 518.

The petitioners perceive the Court of Special Appeals' interpretation of paragraph 6.B. to be further evidence of the fact that the Ordinance is impermissibly vague. It argues:

The Court of Special Appeals' interpretation creates an obvious discontinuity in the Ordinance. First it imposed the user fee on the renter. Subsequently it imposed an obligation on the businesses to pay the fee out of their rents if the renters failed to pay a full 105% of their rent. Yet the Ordinance contains no mechanism whereby businesses can recover unpaid fees from the renters. The Court of Special Appeals' solution to this paradox was to judicially amend the Ordinance to create a cause of action on behalf of businesses against their renters who fail to pay the additional 5%.

Petitioners' Brief at 33–34. In addition, the petitioners maintain that Maryland Code (1957, 1994 Repl.Vol.) Section 9–705 of Art. 24 provides the exclusive remedy in the case of a

defaulting renter.[10] They also are concerned that the intermediate appellate court, in addition to implying the power of the marinas to sue their nonpaying customers, may have placed a corollary duty on them to do so, for the City's benefit, but without compensation.

Although not nearly so detailed—the Ordinance contains many fewer defining provisions than the State statutory scheme—the user fee scheme contemplated by Ordinance 765 is reminiscent of that set out in Maryland Code (1988, 1994 Cum.Supp.) Title 11 of the Tax–General Article (hereinafter "Tax Article"). Under the State tax scheme, the tax is imposed on retail sales and uses of tangible personal property or taxable services, § 11–102(a), the former of which being defined to include a lease or rental transaction. *See* § 11–101(e), (f) of the Tax Article. While the responsibility for the payment of the tax is the buyer's or lessee's, § 11–403(b), the responsibility for its collection is imposed on the lessor.[11] Section 11–403(a). *See also* § 11–401(a) which makes clear

---

**10.** Maryland Code (1957, 1994 Repl.Vol.) Section 9–705 of Art. 24 provides:

(a) *Request for action.*—If a tax under this article is not paid when due, the tax collector shall ask the attorney or solicitor for the county or municipal corporation to bring an action against the person responsible to pay the tax, unless a lien on real property sufficiently secures the tax or a judgment in the action would not be collectible.

(b) *Initiation of action.*—

(1) If a request is made under subsection (a) of this section, the attorney or solicitor for the county or municipal corporation shall bring the action.

(2) In an action under this section, the plaintiff shall be: (i) The county or the board of the County Commissioners; (ii) The municipal corporation; or (iii) The tax collector authorized by law to collect the tax.

(c) *Compromise of a claim.*—If the attorney or solicitor for the county or municipal corporation and tax collector agree that the full amount of the claim is not collectible, the attorney or solicitor may:

(1) Compromise the claim;

(2) Accept a lesser amount; and

(3) Issue a release of the claim or a satisfaction of the judgment.

**11.** The person responsible for collecting the tax is the "vendor," which in the case of a lease transaction, is defined to include, the lessor. *See* § 11–101(1) of the Tax Article.

that not only is the vendor liable for collection of sales and use taxes, but is trustee, for that purpose, for and on account of the State. When the tax is to be collected is also prescribed, *e.g.,* when the sale is made, "regardless of when the taxable price was paid," subsection 11–403(a)(1), and, in the case of an installment sale, as required by the regulations promulgated by the Comptroller, subsection (a)(2).

Section 11–601 provides for the payment of the tax. Pursuant to subsection (b)(1), "[a] vendor who makes a sale subject to the sales and use tax shall pay the sales and use tax that the vendor collects for that sale with the return that covers the period in which the vendor makes that sale." Subsection (c)(2) expressly imposes personal liability on a vendor who either fails to collect the tax as required by section 11–403 or fails to pay it as required by section 11–601(b)(1). Because the vendor may be required personally to pay the tax, section 11–401(b) gives the vendor "the same rights to collect the sales and use tax from a buyer and the same rights regarding the nonpayment of the sales and use tax by a buyer that the vendor would have if the sales and use tax were a part of the purchase price of the tangible personal property or taxable service at the time of the sale."

This Court has addressed a lessor's obligation, under this scheme, to collect and pay use taxes on leases it had previously assigned. In *Chesapeake Indus. Leasing Co. v. Comptroller of Treasury,* 331 Md. 428, 628 A.2d 234 (1993), the appellant argued that its assignment of leases under which it was lessor effected a transfer of its vendor status under the statute, thus relieving it of its obligation to remit the use taxes accrued under the lease to the Comptroller. We rejected that argument, citing section 11–601(c), and noting that a lessor has " 'an absolute obligation . . . to collect and pay over to the Comptroller the money collected from the purchaser if it is available or the proper amount of his own money if it is not.' " *Id.* at 435–36, 628 A.2d at 237 (quoting *Rockower Brothers, Inc. v. Comptroller,* 240 Md. 379, 392, 214 A.2d 581, 588 (1965)). Another issue we addressed was "the effect on the lessor's sales tax obligation, if any, of the lessee's failure to

make lease payments as the lease requires." 331 Md. at 431, 628 A.2d at 235. We held "that a vendor who is a lessor of tangible personal property must remit sales taxes on an accrual basis." *Id.* at 444, 628 A.2d at 242. To reach that conclusion, we construed, as we were required by Section 11–403(a)(2) to do, the applicable regulation promulgated by the Comptroller. We interpreted that regulation, which provided, "[e]ach lease payment period is considered a separate lease, and thus a separate sale, for the purpose of determining when the tax is to be collected or paid," to refer to the period itself, not the actual payment. Thus, we held that it required the collection of the use tax on an accrual basis. *Id.* at 440, 628 A.2d at 240. In that circumstance, we concluded, "the tax on a monthly rental would simply be due each month." *Id.*

Similar is by no means identical. Notwithstanding that it does not contain a provision expressly placing the burden on the buyer to pay the user fee, we have already determined that Ordinance 765 is sufficiently clear as to withstand a vagueness challenge on that basis. We observe, in that regard, that paragraphs 2 and 3 of the Ordinance, addressing the businesses' responsibility for charging, collecting, and remitting the user fees, are similar in purpose and effect to the requirements of sections 11–403(a) and 11–601(b)(1) of the State Retail and Use Tax scheme. Paragraph 3 also requires the submission of "[a] report listing the names of the lessees, the amount of rent paid and the user fee due . . . along with all user fees collected." Thus, it instructs the affected businesses to remit user fees "collected," during each semi-annual period. Unlike section 11–403(a)(2), it does not depend upon an external source to define "collected."

Related to paragraph 3 is paragraph 6.B. The latter penalizes a business's failure "to remit the fees due pursuant to this Ordinance as required in paragraph 3." Read together with paragraph 3, it becomes clear that the user fees "due," for

purposes of paragraph 6.B.,[12] are those that have been "collected" by the businesses. The term, "collected" is not ambiguous; it contemplates that the fees be received by the businesses from the renters. While, to be sure, they are obliged to charge, as well as to collect, the user fees, *see* paragraph 4; *see also* paragraph 3 (requiring semi-annual report of what user fees are due), the businesses are not required to insure the city's receipt of all of the user fees charged.

We agree with the respondent that Ordinance 765 does not permit the businesses to circumvent the user fee simply by declining to collect it. Certainly, the Ordinance must be interpreted as requiring the businesses to perform the responsibilities imposed upon them in good faith. A result which would permit businesses to avoid that responsibility, without sanction, would be totally illogical. This is especially the case when it is considered that the Ordinance requires not only that the businesses collect the user fee, but that they also charge it and keep a record which reflects the amount of such fees that is due. Thus, the businesses, as the Court of Special Appeals pointed out, are deemed to have collected user fees applicable to the portion of the rent received, whenever they collect any of the rent due. That is the proper interpretation of "collected," as used in paragraphs 2 and 3. Whether the businesses have violated paragraph 6.B., however, cannot be determined as a matter of law. That must be considered and determined in proceedings that paragraph contemplates to establish that the Ordinance has been violated.

Ordinance 765 does not contain a provision comparable to section 11–601(c)(2), making the businesses personally liable for the user fees. Nor does it contain a provision similar to section 11–401(b), giving the businesses a right of action to recover the user fees from the responsible party. Only if it can be implied from paragraph 31 that the Ordinance contem-

---

12. While the word "due" has the same meaning, *i.e.*, payable or owing, in both paragraph 3 and paragraph 6, what each paragraph addresses as being "due" is different. Under paragraph 3 it is a certain amount of user fees that must be reported as "due." Under paragraph 6, it is the amount of user fees collected that is "due."

plated that payment of the user fees would always be remitted by the businesses, whatever the circumstances surrounding the nonpayment by the responsible parties, can we conclude that it contemplated that the businesses would be personally liable for payment of the user fees. In that event, a right of action to recoup those fees from the renters could also be implied. To imply personal liability on the part of the businesses from the wording of Ordinance 765 is "to extend the [Ordinance's] provisions by implication, beyond the clear import of the language used, ... and ... to enlarge the [Ordinance's] operation so as to embrace matters not specifically pointed out." *Comptroller of Treasury v. John C. Louis Co.*, 285 Md. 527, 539, 404 A.2d 1045, 1053 (1979). That is inconsistent with the principle that in cases of doubt, tax impositions are construed "most strongly against the government, and in favor of the citizen." *Id.* (quoting *Comptroller v. Mandel Re-Election Comm.*, 280 Md. 575, 580, 374 A.2d 1130, 1132 (1977)).

The Maryland statute not only makes the lessor personally liable, whether or not it received monies from the responsible party, but it also specifically provides a mechanism whereby the lessor could attempt to recoup those funds from the responsible party. Because we conclude that the Ordinance at issue in this case does not contemplate personal liability on the part of the lessor, it is not necessary that it address, by implication or otherwise, any right of action that the lessor might have to recover the user fees from the responsible party.

*JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE PETITIONERS.*