*Thornton Mellon, LLC v. Frederick County Sheriff*, *et al.*, Nos. 2224, 2330, 2580, September Term 2019, No. 151, September Term 2020

Opinion by Friedman, J.

**SHERIFFS—IMPLIED POWERS**

When the General Assembly, the Court of Appeals, or the common law grants the sheriff an express power, or gives the sheriff an express duty, the sheriff may also exercise those powers that are fairly implied to fulfill that express power or duty. The sheriff's exercise of those implied powers must be reasonable, neither arbitrary nor capricious, and consistent with the act being administered and relevant law.

Circuit Court for Frederick County,
Baltimore County, Anne Arundel County,
And Howard County
Case Nos. C-10-CV-18-00976,
03-C-18-011990, C-02-CV-19-002613,
and C-13-CV-19-001149.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

CONSOLIDATED CASES

_____

Nos. 2224, 2330, 2580
September Term, 2019

_____

No. 151
September Term, 2020

_____

THORNTON MELLON, LLC, ET AL.

v.

FREDERICK COUNTY SHERIFF,
BALTIMORE COUNTY SHERIFF, ANNE
ARUNDEL COUNTY SHERIFF, ET AL.,
AND HOWARD COUNTY SHERIFF

_____

Berger,
Nazarian,
Friedman,

JJ.

_____

Opinion by Friedman, J.

_____

Filed:    September 3, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

After foreclosing on and securing the deed to a property through the tax sale process, a purchaser of a tax sale certificate is entitled to a writ of possession. The writ of possession directs the sheriff to place the tax sale purchaser in possession of the property that they now own. In several counties, the sheriff has adopted policies for how they will serve writs of possession for tax sale purchasers. These consolidated cases ask us to consider whether the sheriffs can adopt and enforce these policies, or whether by doing so, the sheriffs have exceeded the bounds of their express and implied authority.

## FACTS

Under Maryland law, unpaid real property taxes constitute a lien on that property. MD. CODE, REAL PROP. ("RP") § 14-804 (b)(1). To collect the amount due in delinquent property taxes,[1] the tax collector in each county conducts a yearly tax sale, where the county's lien is sold to the highest bidder. RP §§ 14-808(a)(1);14-817(a)(2). The highest bidder is awarded a tax sale certificate. RP § 14-820(a). After the tax sale, the homeowner who has failed to pay their property taxes still owns the property, but has a limited amount of time to satisfy the debt they now owe to the holder of the tax sale certificate. RP § 14-820(a)(7). If that debt is not satisfied within the time provided, the holder of the tax sale certificate has the right to foreclose on the homeowners' right to redeem their property. *Id*. In effect, the holder of the tax sale certificate buys the county's right to collect the debt of

---

[1] The tax sale mechanism is also used to collect "other unpaid charges owed to the City, all of which are liens against the real property." *See* Tax Sale Information https://perma.cc/49AS-LSAH.

unpaid taxes, and either collects the debt formerly owed to the county or becomes the new owner of the property. RP § 14-844(a). The purchaser of the tax sale certificate owns the county's lien. They can collect fees related to the tax sale and can charge interest to the property owner. Because the interest and fees owed will accumulate over time, the longer a homeowner waits to redeem the property, the more expensive it will be.

After a foreclosure judgment is entered, the tax sale purchaser is issued a deed to the property, and the prior owner's claim to the property is extinguished. RP § 14-847. With the foreclosure judgment, the tax sale purchaser is entitled to a writ of possession. RP § 14-850. The writ of possession, issued by the clerk of the court where the foreclosure judgment was entered, directs the sheriff to place the new owner in possession of the property. MD. R. 2-647. A tax sale purchaser would only seek a writ of possession when a newly owned property remains occupied by someone who, prior to the foreclosure judgment, had an ownership interest in the property and used the property as their primary residence. RP § 7-105.1(8).[2]

Maryland Rule 2-647 sets forth the process by which a tax sale purchaser enlists the sheriff's assistance in delivering possession of their newly acquired property:

> Upon the written request of the holder of a judgment awarding possession of property, the clerk shall issue a writ directing the sheriff to place that party in possession of the property. The request shall be accompanied by instructions to the sheriff

---

[2] This year, the General Assembly passed, and the Governor approved, legislation "[a]uthorizing the governing body of a county or municipal corporation to withhold owner-occupied residential property from tax sale during the period from June 1, 2021, through June 30, 2023; and providing for the termination of the Act on June 30, 2023." Acts of Md. 2021, ch. 75. That legislation is not at issue in these cases.

2

specifying (a) the judgment, (b) the property and its location, and (c) the party to whom the judgment awards possession. The clerk shall transmit the writ and the instructions to the sheriff. When a judgment awards possession of property or the payment of its value, in the alternative, the instructions shall also specify the value of the property, and the writ shall direct the sheriff to levy upon real or personal property of the judgment debtor to satisfy the judgment if the specified property cannot be found. When the judgment awards possession of real property located partly in the county where the judgment is entered and partly in an adjoining county, the sheriff may execute the writ as to all of the property.

MD. R. 2-647.

Appellant Thornton Mellon, LLC is a tax sale purchaser.[3] The clerks of the several circuit courts often issue writs of possession directing the sheriffs to place Thornton

---

[3] Our case law describes tax sale purchasers as performing a public service. *See, e.g.*, *Deinlein v. Johnson*, 201 Md. App. 373, 381 (2011) ("Tax sales serve as a mechanism for local government to collect unpaid property taxes."); *Heartwood 88, Inc. v. Montgomery Cty.*, 156 Md. App. 333, 364 (2004) (" … tax sale purchasers are regarded as performing a public service[.]"). And that's true. Tax sale purchasers perform a public service by collecting delinquent property taxes at minimal cost to the local government. But the tax sale mechanism comes at considerable risk and expense to the delinquent homeowner—risk of losing title to one's home and having to pay interest and fees to redeem the property, in addition to the money owed to the local taxing authority. *See*, *e.g.,* JOAN JACOBSON, THE STEEP PRICE OF PAYING TO STAY: BALTIMORE CITY'S TAX SALE, THE RISKS TO VULNERABLE HOMEOWNERS, AND STRATEGIES TO IMPROVE THE PROCESS, (Abell Foundation, October 2014). For the delinquent homeowner, the tax sale mechanism is a costly method of debt collection. And, it is worth noting, it is a form of debt collection that lacks many of the debtor protections that are the hallmark of modern consumer protection regimes. Worse still, this burden falls hardest on the poor and the elderly. *Id.* at 3. Nevertheless, tax sale purchasers have a right to participate in this market, and to engage in sharp business practices, at least until a court constrains those practices. *See, e.g.*, *Thornton Mellon, LLC v. Adrienne Dennis Exempt Trust*, 250 Md. App. 302 (2021), *cert. granted*, ___ Md. ___ (2021) (reporting that tax sale purchaser faxed homeowner misleading documents to cause her to miss a deadline and be liable for additional attorneys' fees). And, as here, Thornton Mellon may try to persuade a court to force the sheriffs' offices to make the tax sale purchaser's job easier or cheaper. Thornton Mellon is also entitled to name its entities howsoever it wishes. But we do not fail to notice that they have

Mellon—or whichever entity to which it assigns the foreclosure judgment [4]—in possession of the properties that it has come to own through the tax sale process.

The sheriffs in Frederick County, Baltimore County, Anne Arundel County, and Howard County have adopted a set of policies for serving writs of possession. The parties have agreed to call these policies the mover policy, the weather policy, and the 60-day policy. Under the mover policy, tax sale purchasers must provide movers and a moving van to take away the personal items belonging to the prior owner, which at the time of the service of the writ, remain inside the property. If a sufficient number of movers and a moving van are not provided, the sheriffs will not serve a writ of possession. Under the weather policy, the sheriffs have discretion to cancel or reschedule the service of a writ of possession during inclement or unsafe weather conditions. Under the 60-day policy, the sheriffs will not serve a writ of possession that is more than 60 days old.

In Anne Arundel County, the sheriff's office refused to serve a writ of possession after Thornton Mellon failed to provide a sufficient number of movers. In Frederick County, the sheriff's office cancelled service of a writ due to inclement weather. In Baltimore County, the sheriff's office refused to serve a writ that was more than 60 days

chosen to conduct their business under the names of, among others, the "crass, unpolished" self-made millionaire from the film *Back to School*, *see* Nina Darnton, *Film: 'Back to School,' With Rodney Dangerfield*, N.Y. TIMES, June 13, 1986, and the "boorish real estate developer" from the film *Caddyshack*. *See* Gene Siskel*, 'Caddyshack' Right on Course as a Low-Budget Laugher*, CHI. TRIB., July 29, 1980.

[4] Thornton Mellon has related entities named Al Czervick, Danny Noonan, and Ty Webb. The record does not disclose the relationship among and between these entities or the functions that they are designed to fulfill on the organizational chart. For the purposes of the appeal, we shall refer to them all by the name of the lead plaintiff, Thornton Mellon.

old. Thornton Mellon filed complaints for declaratory judgment and injunctive relief against each of the sheriffs, in the circuit court for each county. Thornton Mellon's complaints argued that the sheriffs lacked a legal basis to adopt and enforce the three polices, and that the policies were unconstitutional. Anticipating similar treatment by the sheriff in Howard County, Thornton Mellon's affiliate Al Czervik sued the Howard County sheriff for the same injunctive and declaratory relief.

The sheriffs each moved to dismiss the respective complaints, and in the alternative, moved for summary judgment. Each of the circuit courts determined that there were no disputes of material fact, found that the sheriffs had the authority to adopt and enforce these policies, found that these policies were legally valid, and each granted summary judgment in favor of the sheriffs. Thornton Mellon noted a timely appeal in each of the cases. We consolidated the four cases for our convenience, heard all four together, and now issue this opinion in all four cases.

## ANALYSIS

### I. POWERS "FAIRLY IMPLIED"

In Maryland, when a state or local public official is granted an express power or given an express duty, that power or duty carries with it those fairly implied powers incident to exercising or fulfilling the power or duty. *See, e.g.*, *Town of LaPlata v. Faison-Rosewick, LLC*, 434 Md. 496, 523 (2013); *Thanner Enterprises, LLC v. Baltimore Cty.*, 414 Md. 265 (2010); *Tidewater/Havre de Grace, Inc. v. Mayor and City Council of Havre de Grace*, 98 Md. App. 218 (1993). The scope of these implied powers is "liberally construed." *Thanner*, 414 Md. at 279. A government official or agency, however, may not

act in a way that is "inconsistent or out of harmony with, or which alters, adds to, extends or enlarges, subverts, impairs, limits, or restricts the [statutory] act being administered." *Bd. of Liquor License Comm'rs for Baltimore City v. Hollywood Prods., Inc.*, 344 Md. 2, 11 (1996) (quoting *Ins. Comm'r v. Bankers Independent Ins. Co.*, 326 Md. 617, 624 (1992)). A public official's interpretation of how to accomplish a statutory directive should "be given great deference unless it is in conflict with legislative intent or relevant decision law, or is clearly erroneous, arbitrary or unreasonable." *Dep't. of Economic & Employment Dev. v. Lilley*, 106 Md. App. 744, 762 (1995) (cleaned up). The exercise of fairly implied powers must be reasonable, and neither arbitrary nor capricious. *Harvey v. Marshall*, 389 Md. 243, 303 (2005). There are cases attributing these fairly implied powers to all manner of officials in Maryland. *See, e.g.*, *Comptroller of the Treasury v. Two Farms, Inc.*, 234 Md. App. 674 (2017) (holding that Comptroller had implied authority to suspend a cigarette license); *Maryland Ins. Comm'r v. Central Acceptance Corp.*, 424 Md. 1, 34-5 (holding that Insurance Commissioner, "despite the absence of an express authorization or power," had implied authority to issue enforcement orders); *Comptroller of the Treasury v. Washington Restaurant Group, Inc.*, 339 Md. 667, 670 (1996) (holding that the Comptroller could enforce a state tax lien through a writ of execution); *McCullough v. Wittner*, 314 Md. 602, 610-11 (1989) (holding that the Secretary of Public Safety and Correctional Services had implied authority to make monetary awards to aggrieved inmates).[5]

---

[5] The Court of Appeals, and this Court, have recognized that administrative and municipal bodies have the same sort of implied authority to act in ways that further their

Our courts have not previously applied the fairly implied powers doctrine to sheriffs. We understand Thornton Mellon to argue that because the courts haven't yet applied this doctrine to sheriffs, courts should refuse to do so.[6]

Sheriffs hold a unique place in Maryland law. Sheriffs were originally colonial officials appointed by the royal governor. Jonathan W. Acton, II, *The Maryland Sheriff v. Modern and Efficient Administration of Justice*, 2 U. BALT. L. REV. 282, 285 (1972). As the United States Supreme Court described the duties of the Maryland sheriff during the colonial period:

> In his judicial capacity, [the sheriff] formerly held … the county courts, and performed other [related] functions…. As the King's bailiff, he seized to the King's use all escheats, forfeitures, [homeless persons, wandering animals without owners, and goods from a shipwreck that washed ashore] …. As conservator of the peace … he is the representative of the King, or sovereign power of the state for that purpose. He has the care of the county, and though forbidden … to act as a justice of the peace in trial of criminal cases, he exercises all the authority of that office where the public peace was concerned. He may upon view, without writ or process, commit to prison all persons who break the peace or attempt to

statutory directive, and are not otherwise inconsistent. *See, e.g.*, *Town of La Plata*, 434 Md. at 525 (holding that town manager had implied authority to adopt procedures to verify signature on a petition for referendum); *City of Frederick v. Pickett*, 392 Md. 411 (2006) (holding that City of Frederick had the implied authority to condemn individual blighted properties within a non-blighted area); *Tidewater/Havre de Grace, Inc.*, 98 Md. App. at 224 (holding that Town of Havre de Grace had implied authority to adopt a particular ordinance assessing user fees for dock slip usage); *Subsequent Injury Fund v. Ehrman*, 89 Md. App. 741, 752 (1992) (holding that the Subsequent Injury Fund had the implied authority to raise issues of accidental injury and causal connection); *Maryland Port Admin. V.C.J. Lagenfelder & Son, Inc.*, 50 Md. App. 525, 546 (1982) (holding that Board of Contract Appeals had the implied authority to award post-decision interest).

[6] *But see, infra* n.9 (identifying cases holding that sheriffs may exercise discretion in performing certain functions).

break it; he may award process of the peace, and bind anyone in recognizance to keep it…. In his ministerial capacity he is bound to execute all processes issuing from the courts of justice. He is keeper of the county jail, and answerable for the safekeeping of prisoners. He summons and returns juries, arrests, imprisons, and executes the sentence of the court."

*South v. Maryland*, 59 U.S. 396, 401-02 (1855).

After the United States declared its independence from Great Britain, the offices of sheriff were converted to democratically elected officials. MD. CONST. (1776), Art. XLII ("That Sheriffs shall be elected in each county, by ballot, every third year."). Today, the duties of the sheriff are set out in the Maryland Constitution, MD. CONST., Art. IV, § 44, and in Title 2, subtitle 3 of the Courts Article of the Maryland Code. MD. CODE, CTS. & JUD. PROC. ("CJ") § 2-301, *et seq.* "Absent a statutory provision or rule of [the Court of Appeals] explicitly abrogating a sheriff's [common law] duty … the common law duty continues[.]" *Prince George's Cty. v. Aluisi*, 354 Md. 422, 439 (1999). The modern-day sheriffs perform a mixture of functions including courthouse security, service of writs and warrants, sheriff's sales, and law enforcement in some of our more rural counties. Sheriffs hold a unique position that straddles the line between State and local government. As the Court of Appeals explained in *Rucker v. Harford Cty.*, some of the sheriff's duties are State duties, and others are local. 316 Md. 275 (1989) (holding that torts committed by sheriffs in their local capacity are governed by Local Government Tort Claims Act and that torts committed by sheriffs in their State capacity are governed by Maryland Tort Claims Act). Similarly, sheriffs are in a unique position within State government, operating in the interstices between the judicial, executive, and legislative branches. The Maryland

8

Constitution places sheriffs in Article IV, which concerns the judicial department. Most officers described in Article IV are judges, but there are other, court-related, nonjudicial officers discussed in that Article, including Sheriffs, Clerks of the Circuit Courts, and the Registers of Wills. MD. CONST., Art. IV, §§ 44, 25, 41.[7] Nevertheless, sheriffs, unlike all other Article IV actors, perform some executive functions. *See Soper v. Montgomery Cty.*, 294 Md. 331, 336-37 (1982) (holding that the sheriffs' law enforcement duties are executive in nature). But sheriffs are also specifically prohibited from promulgating regulations pursuant to the State administrative procedures act because they are not part of the executive branch. MD. CODE, STATE GOV'T ("SG") § 10-102(b)(2). The sheriffs in Maryland truly have a foot in each world: ancient *and* modern; State *and* local; executive *and* judicial.[8]

Although the sheriffs are unique in many ways, we see no reason, and Thornton Mellon has not offered one, why the sheriffs would not be entitled to the same fairly implied powers to which all other public officials are entitled.[9] We hold, therefore, that the

---

[7] Notaries public are also recognized in Article IV. MD. CONST., Art. IV, § 45. But notaries public are not governmental actors and not relevant to this analysis. SG § 18-101, *et seq.*

[8] We also note that candidates for sheriff run for office in partisan elections. As such, the candidates for that office are urging the voters to vote for them because, they say, they will conduct the duties of the office in a manner consistent with a governing philosophy. It would be inconsistent with these partisan elections for us to hold that such elected officials have no discretion in the manner in which they conduct their duties.

[9] In a related context, the Court of Appeals has held that when performing their courthouse security function, the sheriff had the discretion to keep a criminal defendant in leg-iron restraints during the trial after concluding that the defendant was an escape risk. *Bowers v. State*, 306 Md. 120, 138 (1986) ("The sheriff was vested with responsibility here. In the course of the discharge of his responsibilities his office made a decision."). The

9

same analysis applies—when sheriffs are granted an express power or given an express duty, by the General Assembly, the Court of Appeals, or the common law, they are also given all powers that are fairly implied to exercise or fulfill that express power or duty.[10]

## II.    THE POLICIES HERE

As described above, each of the sheriffs adopted a mover policy, weather policy, and a 60-day policy. Thornton Mellon challenged whether the sheriffs had the authority to adopt each policy. The circuit courts each found that the sheriffs had the authority to adopt the policies, and each granted summary judgment for the sheriffs. On appeal, Thornton Mellon argues that the sheriffs lacked the authority to adopt the three policies, and as a backup position, that the grants of summary judgment were erroneous because there remained genuine disputes over material facts. We, therefore, must look at the express power granted to the sheriffs, and the policies they adopted to execute that express power, to determine whether the policies are within their fairly implied powers.

The express grant relative to each of these policies is found in CJ § 2-301(a), which provides simply that "the sheriff shall serve all papers directed to him according to their

_____

Court of Appeals has also held that, when conducting a sheriff's sale, the sheriff has "a certain amount of discretion in conducting execution sales … [that] must be fairly and impartially exercised." *Buckeye Dev. Corp. v. Brown & Shilling, Inc.*, 243 Md. 224, 230 (1966) (cleaned up); *see also McCartney v. Frost*, 282 Md. 631, 638 (1978) (sheriff is "vested with sound discretion" when selling property at a sheriff's sale).

[10] Our holding today is also consistent with how, for example, the Wisconsin Supreme Court has recognized the implied authority of Wisconsin sheriffs to determine the means by which they fulfill their duties. *Washington Cty v. Washington Cty. Deputy Sheriff's Ass'n*, 531 N.W.2d 468, 472 (Wisc. 1995) ("If the duty is one of those immemorial principal and important duties that characterized and distinguished the office of sheriff at common law, the sheriff chooses the ways and means of performing it.").

10

instructions, within the time set by the court." That express power is also effectuated by Maryland Rule 2-647, which states that, "[u]pon the written request of the holder of a judgment awarding possession of property, the clerk shall issue a writ directing the sheriff to place that party in possession of the property." MD. R. 2-647.

### A. The Mover Policy

The sheriffs in Frederick County, Baltimore County, Anne Arundel County, and Howard County have each adopted a mover policy that requires a tax sale purchaser to provide, at the time of service of the writ of possession, a crew of movers and moving equipment sufficient to remove the prior owner's personal property that remains inside the property.[11] The mover policy requires the tax sale purchaser to remove the prior owner's personal property to the nearest public right-of-way. Thornton Mellon would prefer to merely change the locks at the time of service of the writ of possession and arrange to dispose of the prior owner's personal property at a later date, and in a separate manner.

We begin by noting that, in our view, there is nothing about the mover policy that is "inconsistent or out of harmony with, or which alters, adds to, extends or enlarges, subverts, impairs, limits, or restricts the [statutory] act being administered." *Hollywood Prods., Inc.*, 344 Md. at 11. The mover policy does not, in any way, undermine the sheriffs' duty to "serve [the writ of possession] according to [its] instructions, within the time set by

---

[11] Specifically, the policy requires a moving crew consisting of 8 persons for 1-2 bedroom apartment; 10 persons for a 3 bedroom apartment; 10-12 persons for a townhouse; 12-15 persons for a single family house; 15-25 persons for a retail business; a locksmith; necessary moving equipment; a truck; tools for disassembling personal property; and plastic bags for clothing and other small items.

11

the court." CJ § 2-301(a). The mover policy merely requires the tax sale purchaser to arrive ready to undertake its part of the process.

The sheriffs also point out that the mover policy is effectively identical to the process required by statute when sheriffs serve writs of restitution to evict tenants on behalf of and at the request of landlords.[12] While the General Assembly may have chosen not to *require* that the sheriffs do the same with respect to a writ of possession, we see nothing arbitrary or capricious in the sheriffs *choosing* to serve writs of possession and warrants of restitution in a similar manner.

Thornton Mellon argues, however, that the mover policy increases its costs and provides a disincentive for participation in the tax sale process, and is thus inconsistent with the tax sale process as a whole. We are not convinced. Despite the mover policy, the tax sale process continues unabated. The tax sale certificate is issued, the taxing authority collects the amount due in delinquent taxes, and the tax sale purchaser is either reimbursed (with interest) or receives a deed, free and clear, to the property. Although there is an additional cost to the tax sale purchaser associated with the mover policy, we are not

---

[12] The statute governing writs of restitution requires the sheriff to:

> [C]ause the landlord to have again and repossess the property by putting the landlord (or the landlord's duly qualified agent or attorney for the landlord's benefit) in possession thereof, and for that *purpose to remove from the property, by force if necessary, all the furniture, implements, tools, goods, effects or other chattels of every description whatsoever* belonging to the tenant, or to any person claiming or holding by or under said tenant.

RP § 8-401(d)(1)(i) (emphasis added).

persuaded (and the summary judgment record doesn't support) that this cost is a disincentive to would-be tax sale purchasers generally.[13]

At bottom, however, is the question of what is to become of the prior owner's personal property? The sheriffs argue that it should be moved out to the nearest public right-of-way. Thornton Mellon argues that it should be allowed to change the locks, keep the prior owner's personal items locked inside the new property, so that the prior owner can arrange to come pick them up later, or so that Thornton Mellon can dispose of the items at its convenience. We cannot say which is the better, nicer, or more humane policy, or which policy will result in more personal items being retrieved by the prior owner and which policy will keep the personal items in better condition. We recognize, however, that the choice between these potential policies is in the sheriffs' discretion—not ours—and we cannot say that the choices that the sheriffs of Frederick County, Anne Arundel County, Howard County, and Baltimore City made, were arbitrary or capricious.[14] We hold,

---

[13] The existence of these policies did not dissuade Thornton Mellon from participating in the tax sale process. After filing its Amended Complaint against the sheriff in Frederick County contesting the validity of the mover, weather, and 60-day policies, Thornton Mellon went on to participate in the 2019 tax sale in Frederick County, and, it appears, purchased the tax sale certificates for 303 properties. *See*, 2019 Frederick County Tax Sale Report (May 24, 2019) https://perma.cc/FBL7-8H9A.

[14] The sheriffs also argue that they fear tort liability in lawsuits for the conversion of personal property brought by the prior owners. We take no position on the merits of such a lawsuit, or the defenses to it that the sheriff may have, but avoidance, especially on the advice of counsel, of unsettled, potential liability is a rational, not arbitrary basis for decision-making.

13

therefore, that adopting a mover policy like the one described here is a valid exercise of the sheriffs' fairly implied power.

As noted above, Thornton Mellon proffers, as a backup argument, that summary judgment was inappropriate because the sheriffs submitted the same affidavit, executed by a then-Acting Lieutenant of the Anne Arundel County Sheriff's Office (the "Andre affidavit") that describes only the Anne Arundel County mover policy. Thornton Mellon argues that each sheriff in each separate jurisdiction should have executed an affidavit describing the mover policies adopted in each jurisdiction. But Thornton Mellon makes no allegation that the mover policies enacted and enforced in each of the counties are substantially or materially different from one another. The substance of the mover policy, as it exists in each county, was clear. Thornton Mellon alleged that the sheriffs enforced it, and the sheriffs admitted that they enforced it. The validity of the mover policy was, therefore, appropriate for summary judgment.

### B.    The Weather Policy

The sheriffs have also adopted a policy whereby they may decline to serve a writ of possession during bad weather. There is nothing facially inconsistent between such a policy and the express statutory grant of authority in CJ § 2-301(a). The sheriffs justify the need for such a policy on their decision to maintain consistency with the service of writs of restitution, which have a statutory exception to forestall service in "extreme weather conditions,"[15] and to prevent placing the previous owner's personal property at the nearest

---

[15] RP § 8-401(d)(2)(i). We note that with regard to service of writs of restitution, cessation requires an order of the administrative judge, whereas application of the sheriffs'

14

public right-of-way during extreme weather, which the sheriffs describe as "inhumane, dangerous, and/or impractical." This seems obvious to us. Of course, the sheriffs may decline to serve writs of possession during inclement weather, and adopt a policy that says they may do so. The adoption of the weather policy is a valid exercise of the sheriffs' fairly implied power.

As before, Thornton Mellon argues that the case was not appropriate for summary judgment because, it says, there remained genuine disputes of material fact. Thornton Mellon specifically complains that the weather policy is not sufficiently clear, because it does not know the specific weather conditions that trigger the policy, and because the sheriffs have described the weather policy differently than Thornton Mellon did. Thornton Mellon alleged that the sheriffs "refuse[d] to serve writs during months when the weather was poor." The sheriffs, however, described the weather policy as the discretion to refuse to execute writs of possession "when extreme weather conditions are present," or "a practice whereby writs are not served when the County government and courthouses are closed due to inclement weather." This is not a genuine dispute of material fact. This is a dispute about the language used to describe the weather policy. We hold that the sheriffs have, as part of their fairly implied powers, the authority to determine when weather conditions preclude service of writs of possession.

---

inclement weather policy is decided exclusively by the sheriff. We are not persuaded that this distinction is important for our evaluation.

*C.* *The 60-Day Policy*

Finally, the sheriffs have adopted a policy of refusing to serve tax sale purchasers writs of possession that are more than 60 days old. We understand that the sheriffs consider these writs to be "stale" and require the tax sale purchaser to request that the clerk of the circuit court that issued the now-"stale" writ, to issue a new writ before the sheriff will serve it.

We hold that the 60-day policy is inconsistent with statutory law and the Maryland Rules, therefore, the adoption of the 60-day policy is not a valid exercise of the sheriffs' fairly implied power. A writ of possession issued to a tax sale purchaser cannot, and indeed does not, expire. When the clerk issues the writ of possession upon request of the tax sale purchaser, the tax sale purchaser has necessarily completely foreclosed the prior owner's right to redeem the property. The prior owner can do nothing at that point to reestablish a right to redeem.[16] MD. CODE, TAX-PROP. ("TP") § 14-827 (In a tax sale, "[t]he owner or other person that has an estate or interest in the property sold by the collector may redeem the property at any *time until the right of redemption has been finally foreclosed* under the provisions of this subtitle.") (emphasis added); *Mayor and City Council of Baltimore v. Thornton Mellon, LLC*, 249 Md. App. 231, 239 (2021) ("The delinquent property owner may redeem the property 'at any time *until the right of redemption has been foreclosed* by

---

[16] Of course, the prior owner can purchase the property from the tax sale purchaser under whatever terms are mutually agreeable. We are not aware if this ever happens or that such negotiations are the reason that Thornton Mellon has allowed a writ to sit for more than 60 days.

16

paying the required sum to the collector, who then transfers the money to the tax sale purchaser in exchange for the tax sale certificate.'") (emphasis added). Thus, if a tax sale purchaser allows the prior owner to remain in the property, that is entirely up to the tax sale purchaser. No matter how long a tax sale purchaser sits on a writ of possession before seeking to have it served by the sheriff, the prior owner has no opportunity to reestablish a legal interest in the property.[17]

Because the 60-day policy invalidates otherwise valid writs of possession, we hold it to be invalid. *See Lilley*, 106 Md. App. at 762. Specifically, we hold that the trial court was correct in finding that there were no genuine disputes of material fact, but that the court erred in finding that the sheriffs were entitled to judgment as a matter of law. To the contrary, Thornton Mellon was entitled to judgment as a matter of law. We, therefore, reverse the grant of summary judgment and remand each case to the various circuit courts from which they originated to enter a declaration of rights consistent with this opinion.

## CONCLUSION

We hold that when sheriffs, like other public officials, are granted express duties by statute or rule, they may also exercise any additional power that is fairly implied, so long

---

[17] Although we have earlier approved of the sheriffs' analogies of writs of possession in the tax sale context, to writs of restitution in the landlord tenant context, *see supra* II.A and II.B, the analogy is inapposite with respect to the 60-day policy. Writs of restitution expire sixty days from the date of issuance, RP § 8-401(d)(iii)(1), because circumstances may change. A tenant facing eviction has the right to redeem their interest in the leased premises "at any time before actual execution of the eviction order." RP § 8-401(e)(1). As discussed above, when a writ of possession is issued, the process of transferring ownership to the tax sale purchaser is complete, and the prior owner has no right to redemption.

17

as it does not conflict with legislative intent or relevant decisional law, and is neither clearly erroneous, arbitrary, or unreasonable. The sheriffs' mover policy and weather policy are consistent with legislative intent and relevant decisional law, and are not clearly erroneous, arbitrary, or unreasonable, and are thus valid. We, therefore, affirm summary judgment as to those policies. The sheriffs' 60-day policy is inconsistent with legislative intent and relevant decisional law, and is therefore clearly erroneous. As a result, the 60-day policy exceeds the sheriffs' fairly implied powers and is invalid. As to that policy only, summary judgment is reversed and the cases remanded to the various circuit courts to enter a declaration of rights, pursuant to CJ § 3-409, consistent with this opinion.

**IN CASE NO. 2224 OF SEPTEMBER TERM 2019, JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR THE CIRCUIT COURT TO ENTER A DECLARATION OF RIGHTS PURSUANT TO CJ § 3-409 CONSISTENT WITH THIS OPINION. TWO-THIRDS OF COSTS TO BE PAID BY APPELLANTS, ONE-THIRD BY APPELLEES.**

**IN CASE NO. 2330 OF SEPTEMBER TERM 2019, JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR THE CIRCUIT COURT TO ENTER A DECLARATION OF RIGHTS PURSUANT TO CJ § 3-409 CONSISTENT WITH THIS OPINION. TWO-THIRDS OF COSTS**

**TO BE PAID BY APPELLANTS, ONE-THIRD BY APPELLEES.**

**IN CASE NO. 2580 OF SEPTEMBER TERM 2019, JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR THE CIRCUIT COURT TO ENTER A DECLARATION OF RIGHTS PURSUANT TO CJ § 3-409 CONSISTENT WITH THIS OPINION. TWO-THIRDS OF COSTS TO BE PAID BY APPELLANTS, ONE-THIRD BY APPELLEES.**

**IN CASE NO. 151 OF SEPTEMBER TERM 2020, JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR THE CIRCUIT COURT TO ENTER A DECLARATION OF RIGHTS PURSUANT TO CJ § 3-409 CONSISTENT WITH THIS OPINION. TWO-THIRDS OF COSTS TO BE PAID BY APPELLANTS, ONE-THIRD BY APPELLEES.**